A05A1325. IN THE INTEREST OF J. D., a child.
(619 SE2d 818)

MIKELL, Judge.

J. D., a juvenile, was adjudicated a delinquent for committing acts which constituted the offense of burglary. "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another."[1] On appeal, he challenges the sufficiency of the evidence and argues that the judge exhibited bias when questioning a state's witness. We affirm.

> In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of

---

(Emphasis supplied.) OCGA § 44-7-51 (a).

[1] OCGA § 16-7-1 (a).

the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged.[2]

So viewed, the evidence shows that Lynn Green's house was burglarized on August 12, 2002. Green testified that while she was at work, her kitchen window was broken, and the motion detector inside the house was tripped. The company that monitors her burglar alarm system called Green at work, and the police had arrived at her house by the time she got there. According to Green, the entire window was broken out of the frame, and the perpetrator must have entered the home in order to trigger the motion sensor, because there is no alarm on the window itself. Green further testified that she did not know J. D. and that he did not have permission to be in her house that day.

James, Green's 17-year-old son, testified that he knew J. D. because they went to the same high school and because J. D. was a friend of James's cousin. James further testified that J. D. had never been in his house while James was present. James was cross-examined concerning his friendship with Jeremy Duncan, who is related to J. D., and testified that although Duncan had been to his house, J. D. had never come over with Duncan.

Duncan testified that he was "pretty sure" J. D. had gone with him to Green's house one time and that "It wasn't for long. It was like a walk in, talk for a second, step back out." On cross-examination, Duncan testified that he sat down in the living room and that he could not remember whether he and J. D. stayed in the living room.

John Patterson, a crime scene investigator employed by the Clayton County Sheriff's Office, was called to Green's house to process the scene. He observed pry marks on the kitchen window lock and obtained five latent fingerprints from various areas on the window. The prints did not match any in the Automated Fingerprint Identification System ("AFIS") database at that time. However, on November 3, 2004, Patterson received a "hit" on his computer which gave him a suspect to whom he could compare the latent prints obtained in the Green burglary. Patterson compared those latent prints and J. D.'s inked fingerprint card and charted 14 matching points with the juvenile's left middle finger, which is twice the number of points needed to verify a match. The latent print matching J. D.'s middle finger was found on the interior of the kitchen window.

---

[2] (Footnote omitted.) *In the Interest of M. C. A.*, 263 Ga. App. 770 (589 SE2d 331) (2003); see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Patterson further testified that two of the other latent prints on the window matched J. D.'s fingerprints, but that two prints did not belong to J. D.

Patterson notified Clayton County Police Detective Alan Edward Smithwick of the fingerprint match, and Smithwick obtained an arrest warrant for J. D. When Smithwick went to J. D.'s home to serve the warrant, the juvenile fled into his attic and only agreed to come down after being threatened with a Taser.

1. J. D. contends that the fingerprint evidence is insufficient to sustain his adjudication of delinquency. We disagree.

"To warrant a conviction based solely on fingerprint evidence[,] the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed, under such circumstances that they could only have been impressed at the time when the crime was committed."[3] In the case at bar, the state met its burden of excluding every reasonable hypothesis except that J. D.'s fingerprints were impressed when the burglary was committed. Green testified that whenever she cleaned the house she washed the kitchen window, and both she and James testified that J. D. did not have permission to be in the house. Upon questioning by the court, James reiterated that he had never "hung out" with J. D. Duncan's testimony that he was "pretty sure" that J. D. had been inside Green's house one time and may have been in the living room does not provide an innocent explanation for the presence of his prints on the exterior and interior of the rear kitchen window. "In many of the cases where this court found the state failed to meet its burden, defendant offered an explanation regarding the innocent presence of his prints or evidence that the prints could have been impressed at a time other than when the crime occurred."[4] We hold that the evidence, though circumstantial, was sufficient for a reasonable finder of fact to find, beyond a reasonable doubt, that J. D. committed the acts charged.[5]

2. J. D. next complains that the juvenile judge violated Canon 3 (B) (5) of the Code of Judicial Conduct by exhibiting bias in favor of the state. Specifically, J. D. contends that by questioning the fingerprint witness, Patterson, the judge established unlawful entry, an essential element of burglary. In so doing, J. D. argues, the judge assumed an adversarial stance and violated his right to a fair trial.

---

[3] (Emphasis omitted.) *Baxter v. State*, 211 Ga. App. 650 (1) (440 SE2d 72) (1994). See also *Brown v. State*, 180 Ga. App. 188 (348 SE2d 575) (1986); *Jeffares v. State*, 162 Ga. App. 36 (290 SE2d 123) (1982); *Anthony v. State*, 85 Ga. App. 119, 121 (68 SE2d 150) (1951).

[4] *Brown*, supra, citing *Mooney v. State*, 122 Ga. App. 650, 653 (3) (178 SE2d 281) (1970); *Barnett v. State*, 153 Ga. App. 430, 431 (2) (265 SE2d 348) (1980). See also *Anthony*, supra.

[5] *In the Interest of M. C. A.*, supra; *Brown*, supra.

This argument fails for several reasons. First, the transcript shows that J. D. did not object to the questions of which he now complains and thus failed to preserve the alleged error for appellate review.[6] Even if the error had been preserved, the judge did not violate Canon 3 (B) (5). That subparagraph requires judges to "perform judicial duties without bias or prejudice . . . based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status." J. D. does not allege that the judge exhibited discriminatory behavior applicable to any of the prohibited categories. Accordingly, this Canon does not apply.

Second, "[i]t has long been part of Georgia jurisprudence that a trial judge may propound questions to any witness for the purpose of developing fully the truth of the case, and the extent of such an examination is a matter for the trial court's discretion."[7] In this regard, the trial judge is not permitted "to express an opinion or intimate *to the jury* what has or has not been proven."[8] "[T]he purpose of the limitation 'is to prevent the jury from being influenced, not to keep the judge from making up [her] own mind.' "[9] As there is no jury in juvenile cases, the limitation on the improper expression of an opinion does not apply.

Third, the state had already proved the element of unlawful entry before the court questioned the fingerprint examiner. Green, the victim, testified that the perpetrator must have entered the home in order to trigger the motion sensor, because there is no alarm on the kitchen window. Patterson testified upon direct examination that a latent print found on the interior of the window matched a known fingerprint from J. D. After Patterson was cross-examined, the court propounded him a series of questions concerning the pry marks on the window and J. D.'s fingerprints thereon. Upon a careful review of the transcript, we find that the trial judge asked the questions "for the purpose of developing fully the truth of the case,"[10] which was well within her discretion to do.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[6] *In the Interest of S. U.*, 232 Ga. App. 798, 801 (3) (503 SE2d 66) (1998). Compare *Paul v. State*, 272 Ga. 845, 849 (3) (537 SE2d 58) (2000) ("plain error" doctrine applies in criminal cases to allegations of improper judicial commentary under OCGA § 17-8-57).

[7] (Citation omitted.) *Mullins v. State*, 269 Ga. 157, 159-160 (3) (496 SE2d 252) (1998).

[8] (Citation omitted; emphasis supplied.) *Grayer v. State*, 181 Ga. App. 845, 846 (3) (354 SE2d 191) (1987). See also OCGA § 17-8-57.

[9] *Wilcox v. State*, 236 Ga. App. 235, 236 (1) (511 SE2d 597) (1999), citing *Jones v. State*, 250 Ga. 498, 499-500 (4) (299 SE2d 549) (1983).

[10] (Citation omitted.) *Mullins*, supra at 159 (3).

DECIDED AUGUST 16, 2005 —

*Glaze, Harris & Mack, Robert L. Mack*, for appellant.
*Jewel C. Scott, District Attorney, R. Christopher Montgomery, Jr., Assistant District Attorney*, for appellee.