685 S.E.2d 311 (2009)
300 Ga. App. 438
In the Interest of D.W. et al., children.
No. A09A0900.
Court of Appeals of Georgia.
September 23, 2009.
Reconsideration Denied October 13, 2009.
Anissa R. Patton, for appellant.
Waymon Sims, Atlanta, for appellee.
PHIPPS, Judge.
Through their child advocate attorney, D.W., C.W., and J.W. appeal the juvenile court's denial of a petition brought by the Department of Family and Children Services (DFCS) to terminate their mother's parental rights. They contend that the juvenile court erroneously determined that DFCS had presented insufficient evidence to grant the petition. The children also assert that, during the termination hearing, the judge expressed an opinion in violation of OCGA § 9-10-7. Because these challenges to the judgment are without merit, we affirm.
In July 2004, the children, then ages three years, two years, and nine months, were removed from their mother's sole custody due to an unexplained fractured femur sustained by the youngest child and were placed in DFCS's custody. The mother claimed that the injury had occurred while the children were in the care of a babysitter. The juvenile court adjudicated the children deprived based upon findings, inter alia, that the youngest child had sustained the injury; *312 the mother had failed to ensure adequate supervision for her children in her absence; the children were at risk of physical, mental, and/or emotional harm in their mother's custody; and their putative fathers had failed to legitimate them and to provide for them a home, care, and support.
The juvenile court ordered a reunification plan for the mother. The goals incorporated therein required the mother to complete parenting skills classes; submit to mental health evaluations and follow resulting recommendations; complete anger management classes; maintain stable housing; obtain appropriate employment; visit her children as arranged by DFCS; employ only nonharmful discipline methods for her children; and cooperate with DFCS.
In August 2007, however, DFCS petitioned the juvenile court to terminate, pursuant to OCGA § 15-11-94, the parental rights of the mother and the putative fathers. After a hearing several months later, the court granted the petition as to the children's fathers; their parental rights are not at issue in this appeal. As to the children's mother, the juvenile court denied and dismissed the petition.
1. The children contend that, given the evidence presented, the juvenile court erred by refusing to terminate their mother's parental rights.
OCGA § 15-11-94 sets forth a two-step process for terminating parental rights. First, the court must determine whether there is present clear and convincing evidence of parental misconduct or inability.[1] If there is such evidence, the court shall then consider whether termination of parental rights is in the best interest of the child.[2]
The statute sets forth four requisite factors for a determination of parental misconduct or inability: (i) the child is deprived, as defined in OCGA § 15-11-2; (ii) the lack of proper parental care or control by the parent in question is the cause of the child's status as deprived; (iii) such cause of deprivation is likely to continue or will not likely be remedied; and (iv) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[3] Although the four factors are separately listed, they often overlap such that evidence of one factor proves or at least partially proves one or more of the other factors.[4] And in this case, because the children were not in the mother's custody, the court was required to consider whether, among other things,[5] the mother without justifiable cause had failed significantly for a period of one year or longer prior to the filing of the termination petition: (a) to develop and maintain a parental bond with the children in a meaningful, supportive manner; and (b) to comply with a court-ordered plan designed to reunite the children with their mother.[6]
Although unartfully written, the order at issue reveals that the juvenile court's decision not to terminate the mother's parental rights was premised upon its determination that DFCS had failed to establish that the cause of the deprivation would continue. This determination, the order further reveals, was based upon the mother's progress on her case plan and successful visitation with her children. Regarding the case plan, the court noted that the mother was employed and had housing. In addition, the court noted that the mother had completed parenting skills classes; completed anger management counseling; and submitted to a psychological evaluation, which results the court labeled "inconclusive." Regarding the visitation, the court recognized that conflicting testimony had been given at the hearing. The court acknowledged a child psychologist's opinion that the visitations were harmful to the children, but noted also that the psychologist had neither witnessed a visitation nor observed the children in their mother's presence. The court further cited *313 testimony by DFCS caseworkers who had observed the visitations, noting that their testimony showed that the mother's acts with her children were appropriate and that the children were happy to see their mother, that they ran to her, that they exchanged hugs, and that she brought her children snacks. Viewed in a light favorable to the judgment, the evidence supports the juvenile court's findings concerning the mother's progress on the case plan and successful visitation with her children.
The children maintain that termination was nevertheless warranted, citing what they claim showed, for example, that their mother never provided documentation to DFCS proving that she had obtained housing or employment; that their mother had not completed counseling recommended by a "Dr. Johnson"; that she had not visited them for approximately nine months, from about August 2005 to sometime in May 2006; and that she had struck C.W. on his leg during a visit in January 2007, which ended their visit together that day.
At the hearing, the mother conceded that she had not provided DFCS documentation of her housing, but the evidence adduced showed that the mother had orally notified DFCS of her residential addresses. Regarding her residential history, the evidence showed that, during the preceding eight years, the mother had moved twice and that both moves were imposed upon her because the property owners had plans to demolish and reconstruct the residential units. The mother also testified about her arrangement to move to a larger residential unit if she regained custody of her three children.
The mother also conceded that she had not provided documentation to DFCS as to each of the jobs she had worked since the time that her children were removed from her custody. However, she outlined at the hearing her pertinent employment history, which at times included two concurrent jobs.
Regarding the nine months during which she had not visited her children, the mother explained that she had started a new job and her work hours conflicted with the scheduled visits; that she had been warned by her employer that, notwithstanding her commitments to DFCS, she needed to come to work to keep the job; and that because many of the goals incorporated in her case plan hinged on her financial capacity, she chose to do what she believed was necessary to keep her job. During that period, the mother further recounted, her relationship with her DFCS caseworker was extremely strained because the caseworker had told her that she would never get her children back regardless of any progress she made on her case plan. Thereafter, the mother avoided that caseworker and repeatedly requested that someone else be assigned to her family's case, which did later occur. Notably, the period of time during which the mother failed to visit the children, nine months, was less than that period expressly contemplated by OCGA § 15-11-94 for consideration of whether the parent failed significantly to develop and maintain a parental bond with a child.[7]
Regarding mental health evaluations, the record shows that the mother submitted to psychological testing and a psychiatric assessment. The mother reported that neither the psychologist nor the psychiatrist had made any follow-up recommendations. And the children have not substantiated with any record citation their claim that their mother failed to undergo counseling recommendations by a "Dr. Johnson." No such individual testified at the hearing.
The mother vehemently denied striking C.W. inappropriately, and DFCS presented no witness who saw the alleged incident. The mother testified that, during the visit in question, she was playfully wrestling with her son. She recalled that, when DFCS nevertheless ended the visit, C.W. crawled under a table; and although the DFCS caseworker told him it was time to leave, he pleaded to go with his mother. The mother testified that she loved and missed her children; that she understood that to regain *314 custody, she was required to comply with the case plan; that she had remained committed to so complying; that she believed that she had completed the goals; and that she was prepared to take care of her children.
The question before the juvenile court was not whether the mother was without fault;[8] its charge was to decide whether DFCS had presented sufficient evidence warranting termination.[9] Termination of parental rights is a remedy of last resort, which is not authorized unless, among other things, "there is clear and convincing evidence that the cause of the deprivation is likely to continue."[10] The "clear and convincing standard safeguards the high value society places on the integrity of the family unit and helps eliminate the risk that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior."[11] We view the evidence in the light most favorable to the juvenile court's decision to determine whether it was authorized by the evidence.[12] "In so doing, we do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met."[13] We conclude that the juvenile court's decision not to terminate the mother's parental rights is supported by the record, which shows that DFCS failed to present clear and convincing evidence that the deprivation was likely to continue.[14]
2. The children challenge the juvenile court's denial of DFCS's petition on the ground that, during the termination hearing, the judge remarked that one of the psychologists who testified for DFCS had been a poor witness. They cite OCGA § 9-10-7, which pertinently forbids "any judge, during the progress of any case, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved." The purpose of that limitation, however, is to prevent a jury from being influenced by the judge's opinion.[15] Because the termination hearing was conducted without a jury, the limitation did not apply.[16] There is no merit in this contention.
Judgment affirmed.
SMITH, P.J., and BERNES, J., concur.
NOTES
[1] OCGA § 15-11-94(a).
[2] Id.
[3] OCGA § 15-11-94(b)(4)(A)(i)-(iv).
[4] See In the Interest of P.D.W., 296 Ga.App. 189, 191(1), 674 S.E.2d 338 (2009).
[5] See, e.g., OCGA § 15-11-94(b)(4)(B).
[6] OCGA § 15-11-94(b)(4)(C).
[7] See OCGA § 15-11-94(b)(4)(C)(i), (iii) (requiring court to consider whether parent failed significantly "for a period of one year or longer prior to the filing of the petition for termination of parental rights" to develop and maintain a parental bond with child and to comply with a court-ordered plan).
[8] See In the Interest of S.L.E., 280 Ga.App. 145, 150(1), 633 S.E.2d 454 (2006).
[9] OCGA § 15-11-94.
[10] In the Interest of K.D.E., 288 Ga.App. 520, 526(1), 654 S.E.2d 651 (2007).
[11] In the Interest of S.L.E., supra at 151, 633 S.E.2d 454 (punctuation and footnote omitted).
[12] In the Interest of J.E.E., 235 Ga.App. 247, 248-249, 509 S.E.2d 147 (1998).
[13] In the Interest of P.D.W., supra at 190, 674 S.E.2d 338 (citation omitted).
[14] In the Interest of K.D.E., supra; In the Interest of J.E.E., supra at 249-250, 509 S.E.2d 147.
[15] See Harris v. Massey, 241 Ga. 580, 583(3), 247 S.E.2d 55 (1978); In the Interest of J.D., 275 Ga.App. 147, 150(2), 619 S.E.2d 818 (2005).
[16] See Harris, supra; In the Interest of J.D., supra.