296 Ga. 719
FINAL COPY

S14A1497.  ROBERTS v. THE STATE.

HINES, Presiding Justice.

Keith Jerome Roberts appeals the denial of his motion for new trial, as amended, and his convictions for malice murder, kidnapping, and false imprisonment in connection with the death of Carlnell Walker caused by hyperthermia from entrapment inside the trunk of an automobile. Roberts challenges the sufficiency of the evidence to support his convictions and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

---

[1] The murder and related crimes occurred between June 21, 2006 and July 8, 2006. On March 21, 2007, a Clayton County grand jury returned a 13-count indictment against Roberts and Miles Jonathan Allen, Theodore Paul Holliman, and Breylon Wendell Garland, charging: Count 1 - malice murder; Count 2 - felony murder while in the commission of burglary; Count 3 - felony murder while in the commission of armed robbery; Count 4 - felony murder while in the commission of kidnapping; Count 5 - aggravated assault with intent to murder; Count 6 - aggravated assault with intent to rob; Count 7 - aggravated assault with a knife; Count 8 - aggravated battery; Count 9 - kidnapping; Count 10 - false imprisonment; Count 11 - burglary with the intent to commit aggravated assault; Count 12 - burglary with the intent to commit theft; and Count 13 - armed robbery. Roberts was tried alone before a jury April 23-27, 2012; he was granted a directed verdict on Counts 2, 3, 11, 12, and 13. The jury found him guilty on Counts 1, 4, 5, 9, and 10, and not guilty on Counts 6 and 7. An order of nolle prosequi was entered as to Count 8. On June 7, 2012, Roberts was sentenced to life in prison on Count 1, a consecutive term of life in prison on Count 9, and 10 years in prison on Count 10, to be served consecutively to the sentence on Count 9. The verdict on Count 4 stood vacated by operation of law, and the verdict on Count 5 was found to merge with that on Count 1 for the purpose of sentencing. Trial counsel filed a motion for new trial on Roberts's behalf on May 4, 2012, and new counsel filed on Roberts's behalf amended motions for new trial

The evidence construed in favor of the verdicts showed the following. On July 8, 2006, Clayton County police discovered Carlnell Walker's body while performing a "welfare check" at the residence Walker was renting in Clayton County. The police found Walker's decomposing body tied up in the trunk of his car in the closed garage. Walker had been beaten and stabbed with a sharp object, his front tooth was knocked out, and his mouth had sustained blunt force trauma. His mouth was "gagged" with electrical tape, and his hands were tied behind his back with a coaxial cable, a USB cable, and electrical tape. He was barefoot. Walker had been dead for several days. His position when discovered indicated that he was alive when he was placed in the trunk, and it was determined that despite his injuries, had he been able to free himself he could have avoided death by entrapment in the hot car trunk.

Walker, Roberts, and Allen had attended the same college, and Roberts and Allen had been roommates in college. The three men knew each other and socialized together. Walker was involved in a car wreck in 2006, and shortly before his murder, he was advised that he might recover $50,000 in damages as

on November 20, 2013 and November 21, 2013. The motion for new trial, as amended, was denied on March 28, 2014. A notice of appeal was filed on April 2, 2014, and the case was docketed in this Court's September 2014 term. The appeal was argued orally on October 7, 2014.

2

a result of the wreck. He told his landlord, who also had ties to the same college, that he was expecting a settlement check. Walker was viewed as an "entrepreneur," and was seen on his created website holding up "a wad of money." Roberts, Allen, and others referred to Walker by the nickname "C-Money."

When the police arrived at Walker's residence, they found the back door open, and no signs of forced entry. However, the house showed signs of a struggle with debris on the floor and blood throughout. Items, including a pair of scissors and remnants of Walker's hair, were on the living room floor, and they were placed in a pile in a manner indicating that someone intended to burn them. The globe from a hurricane oil lamp was on the floor near the debris and close to dried smeared blood, which blood was determined to be Walker's and part of a pattern of someone actively bleeding. An empty bottle which had contained lamp oil was found near the debris. Roberts's fingerprints were recovered from the lamp globe; no other fingerprints, including Walker's, were on it. The base of the lamp was found undisturbed on top of a television approximately eight feet away from the globe, and there were no usable fingerprints found on the base. Roberts's fingerprints on the lamp globe were

3

consistent with someone reaching and taking the globe off of the lamp base. Palm prints of Walker's blood were found on the walls, and these prints were determined to have been made by Allen. There were patterns of blood in the bathtub consistent with someone with shoes standing behind someone without shoes who was actively moving. A substance that felt like the lamp oil found in the living room was around the edge of the bathtub. Jeans found in the laundry room contained DNA matching the profiles of Walker and Allen. A claw hammer which appeared to have blood on the metal part was also found in the laundry room. Drawers were pulled out, and the attic access panel was out of place. The blood pattern and locks of Walker's hair on the floor were consistent with one person restraining a body while another was cutting the hair. The blood patterns in the halls suggested two people dragging Walker through the house. The small amount of physical evidence on the bumper of the vehicle in which Walker's body was found was consistent with more than one person lifting Walker's body into the trunk.

When Allen was taken for palm and fingerprinting on July 20, 2006, police observed that he had a healing three-inch-long cut on his right hand which appeared to have been made by a knife. During the warranted search of

Roberts's apartment, police found a sock stained with Allen's blood on the master bedroom floor.

1. Roberts contends that the evidence was insufficient to support his conviction on any count because the State did not meet its burden to prove that his fingerprints were impressed on the lamp globe at the time the crimes were committed, and that such fingerprints were the sole evidence that he participated in the crimes. He further urges insufficiency because of what he offers as a reasonable explanation of why his fingerprints were on the globe, that is, that he was frequently in Walker's home and that power to the home was often off necessitating use of the oil lamp.

As Roberts maintains, when fingerprint evidence is the only evidence linking a defendant to the crimes on trial, the State must prove to the exclusion of other reasonable hypotheses that the fingerprints could have been impressed only at the time of the commission of the crimes. *Rivers v. State*, 271 Ga. 115, 116 (1) (516 SE2d 525) (1999); *Leonard v. State*, 269 Ga. 867, 868 (1) (506 SE2d 853) (1998). It is equally true that under former OCGA § 24-4-6, and present OCGA § 24-14-6, in order to warrant a conviction based solely upon circumstantial evidence, the proven facts must be consistent with the hypothesis

5

of guilt and must exclude every reasonable theory other than the guilt of the accused. *Clark v. State*, 296 Ga. 543 (769 SE2d 376) (2015). And, when the circumstantial evidence supports both a theory consistent with guilt and one consistent with innocence, the evidence does not exclude every other reasonable hypothesis except guilt, and therefore, is insufficient to prove the defendant's guilt beyond a reasonable doubt. *O'Neill v. State*, 285 Ga. 125 (674 SE2d 302) (2009).

First, Roberts's fingerprints were not the only evidence linking Roberts to the crimes. The evidence and reasonable inferences therefrom showed that Roberts and Allen were close friends and were part of Walker's social inner circle; that Walker was perceived by some to have money, and indeed, cash on hand, and that Walker had not kept silent about the fact that he was to receive a substantial money settlement; the crime scene evidence suggested Walker knew his attackers, and that they were searching for something of value, tortured Walker to find out where it was, and when they were unsuccessful in doing so placed Walker in the hot car trunk; that the physical evidence of Allen's hand injury was consistent with having been sustained in the attack upon Walker; and that Allen's blood-stained item from an obvious injury was found in Roberts's

6

bedroom.

Moreover, the circumstances surrounding the fingerprints lead to the only reasonable explanation that they were impressed during commission of the crimes. See *Crawford v. State*, 292 Ga. App. 463 (1) (664 SE2d 820) (2008). Although Roberts cites testimony from his younger brother to the alleged effect that Roberts visited Walker's home on multiple occasions, and that Walker possessed the hurricane lamp because his power frequently went out, and therefore, that Roberts had an innocent reason to touch the hurricane lamp, such evidence does not aid Roberts's hypothesis of innocence. Indeed, it belies it. Roberts's brother's exact testimony was that Walker had resided not only in the ransacked home in Clayton County where the crimes occurred but in a different home as well, and that Roberts had been inside one of these unspecified homes only on "several different occasions." There was no testimony from the brother that Roberts was ever at Walker's residence when the power was out. In fact, the testimony was that when Roberts and his brother visited Walker, they would, inter alia, watch television, an activity which plainly required electric power. Further, the lack of Walker's or another's discernible fingerprints on the lamp or its base belie his or other's frequent recent use of the lamp, or indeed its use

for the intended purpose at all. The empty bottle of lamp oil found near the globe and the pile of debris support the inference that the globe was removed from the lamp base in order to obtain the oil to incinerate evidence of the crimes and/or to torture Walker. Moreover, there was no testimony from the brother or other evidence that Roberts actually touched the lamp or its globe at any time other than that of the attack upon Walker. See *In the Interest of J. D.*, 275 Ga. App. 147, 149 (1) (619 SE2d 818) (2005) (The testimony that the witness was "pretty sure" the defendant had been to the house before the burglary was not an innocent explanation of why the defendant's fingerprints were found on the window used to gain entry.) Furthermore, the absence of other fingerprints on the globe, the positioning of Roberts's fingerprints on the globe as impressed by lifting it off of its base, the globe being found on the floor amidst the rubble of the crime scene, and the emptied bottle of lamp oil lead to the only reasonable conclusion that Roberts's fingerprints were left on the globe at the time of the crimes.

"[C]ircumstantial evidence must exclude only *reasonable* inferences and hypotheses and it is not necessary that such guilt be devoid of every inference or hypothesis except that of the defendant's guilt." *Reeves v. State*, 294 Ga. 673

(755 SE2d 695) (2014) (Emphasis supplied.) And, the circumstantial evidence in this case does not equally support a theory consistent with Roberts's innocence. *O'Neill v. State*, supra.

The evidence, though circumstantial, was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Roberts was guilty of the malice murder of Walker and the related crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Roberts further contends that his trial counsel was ineffective for failing to investigate and call as a witness at trial, his friend and college freshman roommate, Hall, who he claims would have provided an innocent explanation for his fingerprints on the lamp globe. He maintains that Hall would have testified that he and Roberts helped Walker move into his Clayton County home, thereby touching Walker's furniture and other belongings, that Roberts helped Walker unpack, and that Roberts visited Walker's home multiple times. He further urges that this testimony is not cumulative of that of Roberts's brother because although the brother's testimony puts Roberts in Walker's home on multiple occasions, Hall's testimony puts Roberts's hands on Walker's furniture, and thus, Roberts was prejudiced by the jury not hearing this

9

testimony.

In order for Roberts to prevail on his claim that his trial counsel was ineffective, he has to demonstrate under the standard of *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that his trial counsel's performance was deficient, and that but for counsel's deficiency, there is a reasonable probability that the outcome of his trial would have been more favorable. *Allen v. State*, 293 Ga. 626, 627 (2) (748 SE2d 881) (2013). In order to show a deficiency, Roberts must overcome the strong presumption that his trial counsel's performance was within the broad range of reasonable professional conduct, the reasonableness being judged from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. To satisfy the second *Strickland* prong of prejudice requires that Roberts demonstrate the reasonable probability that, absent the claimed professional errors by counsel, the result of his trial would have been different. Id. See *Hites v. State*, 296 Ga. 528 (___ SE2d ___) (2015).

At the hearing on Roberts's motion for new trial, as amended, trial counsel, who was an experienced criminal defense attorney, testified he thoroughly prepared for Roberts's case with the assistance of two other

10

attorneys; he was aware of the importance of the issue of when Roberts's fingerprints were made on the lamp globe; the defense needed to rebut the inference that Roberts's fingerprints were impressed on the globe at the time of the crimes and that he called Roberts's brother to testify to rebut such inference, to humanize Roberts, and to tell the jury about the relationship between Walker and the others; counsel did not recall either interviewing Hall, or Hall's name being provided to him; if the potential witness's name had been given to him, counsel would probably have written it down, had the person interviewed, and given the State notice of the witness; and counsel's practice was not to call more than one witness on the same point because of the likelihood they would contradict one another.

First, in reviewing a trial court's decision on the alleged ineffectiveness of counsel, this Court is to accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but to independently apply the legal principles to the facts. *Scandrett v. State*, 293 Ga. 602, 605 (4) (748 SE2d 861) (2013). In this case, the trial court found that trial counsel's performance was not deficient in the manner claimed because there was no evidence that trial counsel was ever informed that Hall was a witness to Roberts helping Walker

11

move into his house, and based upon the evidence at the hearing in the matter, this Court cannot conclude that such finding is clearly erroneous. Id. What is more,

> [t]he decision of whether to call a witness to testify at trial is a matter of trial strategy and tactics, and such a strategic and tactical decision cannot be deemed deficient performance unless the decision is so unreasonable that no competent attorney would have made it under similar circumstances.

*Hites v. State*, supra, citing *Miller v. State*, 296 Ga. 9, 12 (4) (a) (764 SE2d 823) (2014). And, it cannot be said that trial counsel's strategy was unreasonable especially in light of what Hall's testimony would have been. At the motion-for-new-trial hearing, Hall testified that while he, Roberts, and an unnamed college student helped Walker move into the Clayton County house, Hall did not unpack any of the items, did not witness any unpacking, never saw the lamp and/or its globe during the move, and assumed that if it was with Walker's belongings it was boxed up; and that Walker's mother had helped box up items. Hall further testified that Walker's girlfriend was "in and out sporadically" during the move, and that inasmuch as Roberts stayed at the residence to help unpack, Hall could "only assume" that either Walker or Roberts "unpacked the lamp." There is nothing in Hall's testimony about him witnessing Roberts

12

unpacking any of Walker's belongings, much less touching any part of the lamp during the move or on any other occasion; thus, even if it was assumed that trial counsel was informed about Hall being a potentially positive witness, and that the failure to call him at trial was deficient, there is no reasonable probability that the result at trial would have been different had Hall testified for the defense. Simply, the ineffectiveness of trial counsel has not been shown. *Hites v. State*, supra.

Judgments affirmed. All the Justices concur.

Decided March 16, 2015.

Murder. Clayton Superior Court. Before Judge Benefield.

Garland, Samuel & Loeb, Edward T. M. Garland, Amanda R. Clark Palmer, for appellant.
Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Frances C. Kuo, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.