In the Supreme Court of Georgia

Decided January 22, 2019

S18A1434. JORDAN v. THE STATE.

BLACKWELL, Justice.

Joseph Lashun Jordan was tried by a Richmond County jury and convicted of murder and other crimes in connection with the fatal shooting of Johnny Luckey.[1] On appeal, Jordan contends that he was entitled to a mistrial after the prosecuting attorney accused his lawyer of trying to deceive the jury, and he also claims that he was denied the effective assistance of counsel because his lawyer

---

[1] Luckey was killed on May 6, 2011. In June 2011, a Richmond County grand jury indicted Jordan and three codefendants, charging each of the defendants with malice murder, felony murder, armed robbery, and possession of a firearm during the commission of a crime. Jordan was tried alone in November 2012, and the jury found him guilty on all counts. (His codefendants entered into plea agreements with the State.) The trial court sentenced Jordan to imprisonment for life without the possibility of parole for the malice murder, a consecutive term of imprisonment for life for armed robbery, and a consecutive term of imprisonment for five years for possession of a firearm during commission of a crime. The trial court purported to merge the felony murder into the malice murder, but the felony murder count actually was vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Jordan moved for a new trial in December 2012, and he amended the motion in September 2015. After a hearing, the trial court denied the motion in August 2016. Jordan filed a timely notice of appeal, and after the record was transmitted to this Court, the case was docketed to the August 2018 term and submitted for a decision on the briefs.

was absent from the courtroom during a critical stage of the trial. Finding no reversible error, we affirm.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows that Luckey was elderly and lived alone. Believing him to be an easy target, Jordan and his three accomplices—Artavious Feazell, Tracy Lindsey, and Rufus Van—made plans to rob Luckey. Lindsey testified that, on the evening of May 6, 2011, Jordan and the three accomplices drove to Luckey's neighborhood in Richmond County and parked a short distance from his house. Jordan carried a gun. While Van waited in the car as a getaway driver, Jordan, Feazell, and Lindsey made their way to the house and came to the front porch. Before attempting to break in, Jordan and Lindsey walked to the side of the house and looked through a kitchen window, where they saw Luckey sitting on a couch. According to Lindsey, Jordan said, "I'm about to go ahead and shoot," and he fired a shot through the window. Jordan and Lindsey then returned to the front porch, at which time Jordan ripped open the screen door, kicked in the front door, and entered the house, accompanied by Lindsey and Feazell. Once inside, Jordan fired another shot at Luckey, who slid off the couch and lay unmoving on the floor, still connected to his oxygen tank. After checking Luckey's pockets and

2

searching the house for valuables, the three men got back into the car with Van and left the premises. The proceeds of the robbery were two lockboxes that turned out to contain nothing of value.

Van testified that, as he was waiting in the car during the robbery, he heard a gunshot, and about 10 to 15 minutes later, Jordan, Feazell, and Lindsey came running back to the car. Jordan was carrying a gun, and when the three got in, Feazell and Lindsey both said that Jordan shot Luckey. In addition to the testimony of Lindsey and Van, the State introduced a statement that Jordan made to the police after he had been arrested and given Miranda[2] warnings. In that statement, Jordan confessed to participating in the robbery, and his account of the events was similar to Lindsey's in many respects. One major difference, however, was that Jordan denied carrying the gun, shooting Luckey twice, and kicking in the door—he blamed these actions on Lindsey instead. An autopsy revealed that Luckey died from two gunshot wounds—one to the neck and one to the abdomen.

Jordan does not dispute that the evidence is sufficient to sustain his convictions. But consistent with our usual practice in murder cases, we

---

[2] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

independently have reviewed the record to assess the legal sufficiency of the evidence. We conclude that the evidence presented at trial, when viewed in the light most favorable to the verdict, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Jordan was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Jordan first argues that the trial court erred when it denied his motion for a mistrial based on the prosecuting attorney's accusation in the presence of the jury that Jordan's lawyer was "deceiving" the jury. According to the transcript, the prosecuting attorney made this comment while defense counsel was cross-examining Lindsey and trying to show that it was Lindsey, not Jordan, who actually fired at Luckey. In responding to defense counsel's questions, Lindsey acknowledged that he had pleaded guilty to possession of a firearm during commission of a felony for participating in the robbery, but he denied ever touching the gun. The following exchange then ensued:

> [DEFENSE COUNSEL]: So you're lying—you were lying to the Court—
> …

4

[PROSECUTING ATTORNEY]: I'm going to object because [defense counsel] well knows that under the theory of a party to a crime—

[DEFENSE COUNSEL]: Your Honor, objection to the speaking—objection . . . . He's making a speaking objection—I object to this.
…
[PROSECUTING ATTORNEY]: *Well, she's . . . . She's deceiving—the jury right now*.

(Emphasis supplied.)

At that point, defense counsel asked for a mistrial. The trial court told the jurors to disregard the statements that they had just heard and excused them from the courtroom. After conferring with the lawyers outside the jury's presence, the trial court denied Jordan's motion for a mistrial, but agreed to remind the jury again to disregard the prosecuting attorney's statement. The court noted, "I think they realize—there's no question in my mind that that jury realized that this was a heated exchange because every one of them was smiling." When the jurors came back, the trial court instructed them:

Ladies and gentlemen of the jury, I just want to remind you the last thin[g] I told you before you stepped out was just disregard that—everything you heard in that exchange. It was kind of a heated exchange and just disregard that in its entirety. Pay no attention to that . . . .

. . .

5

Not between the witness and counsel . . . but between counsel with their objection I think it got kind [of] rather heated and so y'all just disregard that and you [defense counsel] might continue asking your questions.

Jordan argues that the prosecuting attorney's "deceiving" remark impugned his lawyer's character and credibility and that the court's curative instructions were insufficient to erase the resulting prejudice. We disagree. It is true that "we find distasteful any argument that unnecessarily impugns the integrity of opposing counsel, even if obliquely," Brockman v. State, 292 Ga. 707, 727 (14) (a) (739 SE2d 332) (2013) (citation and punctuation omitted), and we do not condone a lawyer accusing another lawyer of deceit in the presence of the jury.[3] Nonetheless, the decision to grant a motion for mistrial lies "within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." Childs v. State, 287 Ga. 488, 492 (4) (696 SE2d 670) (2010)

---

[3] That said, the comment at issue here does not strike us as especially egregious, considering the context in which it was made. It appears from the transcript that, in trying to convince the jury that Lindsey was the triggerman, defense counsel was pushing an unsound legal theory that Lindsey's pleading guilty to possessing a firearm was inconsistent with his denial of touching the gun. Under well-established Georgia law, a defendant can be guilty of a crime involving firearm possession as a party to a crime "if it is shown that he is the accomplice of the person who was in physical possession of the pistol." Johnson v. State, 276 Ga. 368, 371 (1) (578 SE2d 885) (2003).

(citation and punctuation omitted). See also OCGA § 17-8-75 (giving the trial court discretion to grant a mistrial based on prosecutorial misconduct).

Here, a mistrial was not necessary to preserve Jordan's right to a fair trial. The transcript indicates that the jury did not take the "deceiving" remark seriously. The trial court observed that the jurors "realized that this was a heated exchange because every one of them was smiling." Moreover, the trial court twice instructed the jury to disregard the "heated exchange" in which the "deceiving" comment was made. See Coleman v. State, 301 Ga. 720, 722 (3) (804 SE2d 24) (2017) (we "ordinarily presume" that a jury follows curative instructions). Finally, the evidence against Jordan was very strong. Two witnesses testified to Jordan's commission of the crime, and Jordan himself, in his statement to the police, confessed to participating in the robbery. In this light, the trial court did not abuse its discretion in ruling that the prosecutor's comment did not warrant a mistrial. See Arrington v. State, 286 Ga. 335, 347 (16) (g) (687 SE2d 438) (2009) (trial court did not abuse its discretion in refusing to grant a mistrial based on prosecutor's derogatory comments about defense counsel). Cf. Brockman, 292 Ga. at 727 (14) (a) (no reasonable probability that prosecutor's

attack on defense counsel's credibility affected the jury's decision to impose death sentence).

3. Jordan further argues that he was denied the effective assistance of counsel when, he says, his lawyer was absent from the courtroom during a critical stage of the trial. The trial transcript shows that the prosecuting attorney called Feazell as a witness for the State, but Feazell refused to take the oath and informed the trial court that he did not wish to testify. At that point, the court excused the jury from the courtroom. After the jury left, the prosecuting attorney rose to speak, but the court interjected, "Wait one second because [defense counsel] had to step out to the restroom." The transcript shows that the trial was recessed for two minutes and that defense counsel returned to the courtroom afterwards. The prosecuting attorney then questioned Feazell about his refusal to testify for the State, informing him that it was a breach of his plea agreement.

When the prosecuting attorney finished, defense counsel asked the trial court if she could question Feazell. The court gave her permission to do so, but not in front of the jury, explaining: "He just came in and stated he did not wish to testify and that's all . . . I expect the jury to hear. . . . [H]e's not willing to take the oath; he's not willing to testify. I'm not going to order him to." Defense counsel

then asked, "Oh. He's not willing to take the oath?" The court responded, "No, ma'am. I tried to get him to take the oath. He said I'm not going to testify." Defense counsel insisted that she had subpoenaed Feazell. She asked Feazell directly if he would testify for the defense, but Feazell again refused, invoking the Fifth Amendment. Ultimately, the court agreed with the prosecution that the defense could not question Feazell in front of the jury given that he had invoked his right against self-incrimination, and Feazell was dismissed.

Jordan now argues that the transcript shows that his lawyer was absent when Feazell refused to take the oath, and this absence during a critical stage of the trial, he says, entitles him to a new trial, even absent a showing of prejudice. Jordan relies on United States v. Cronic, where the United States Supreme Court observed:

> There are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. Most obvious, of course, is the complete denial of counsel. . . . [A] trial is unfair if the accused is denied counsel at a critical stage of his trial.

466 U. S. 648, 658-659 (III) (104 SCt 2039, 80 LE2d 657) (1984). Cronic presents a narrow exception to the usual rule that, to obtain a new trial based on ineffective assistance of counsel, a defendant must show not only that his counsel

9

performed deficiently, but also that this deficient performance prejudiced the defense. See Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); Sullivan v. State, 301 Ga. 37, 39-40 (2) & n.3 (799 SE2d 163) (2017).

This case, however, is not governed by Cronic. In its order denying Jordan's motion for a new trial, the trial court expressly found that defense counsel "was present during all critical stages of the trial, and in fact was present in court when co-defendant [Feazell] invoked his Fifth Amendment privilege." As we have explained repeatedly, "a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous." Green v. State, 302 Ga. 816, 818 (2) (809 SE2d 738) (2018) (citations and punctuation omitted). Under this "highly deferential" clear-error standard, we will not reverse a trial court's factual findings "if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them." Yarbrough v. State, 303 Ga. 594, 596-597 (2) (814 SE2d 286) (2018) (citation and punctuation omitted).

10

The record here supports the finding that Jordan's trial lawyer was present in the courtroom during Feazell's invocation of his Fifth Amendment right against self-incrimination. As described above, the transcript shows that, after Feazell refused to take the stand and the jury left the courtroom, the trial court recessed the proceedings for a couple of minutes to allow defense counsel to use the restroom. There is no indication at this point that defense counsel had been absent before the jury was sent out. Moreover, at the motion for new trial hearing, Jordan's trial lawyer testified that "I can't imagine [this event] not happening in front of me," and "I think everything happened in front of me and I think the transcript bears that out because it says we took a recess for two minutes for me to come back."

It is true that, after the recess, and after the prosecuting attorney questioned Feazell, defense counsel seemed to express some surprise at the fact that Feazell had refused to take the oath, and this could support an inference that counsel was not in the courtroom when Feazell first refused to testify. But it does not demand such an inference, especially in light of the other evidence—the court's express grant of a recess and the trial lawyer's testimony—that supports the trial court's conclusion that defense counsel was in fact present. In other words, at least some

11

evidence indicates that counsel was present, and this is enough to uphold the trial court's finding under the clear-error standard.[4] See Yarbrough, 303 Ga. at 596-597 (2). See also State v. Lynch, 286 Ga. 98, 101 (1) (686 SE2d 244) (2009) (trial court's findings that were supported by some evidence were not clearly erroneous, even though contradicted in part by other evidence).[5]

Judgment affirmed. All the Justices concur.

---

[4] Given our holding, we need not decide whether Feazell's invocation of his Fifth Amendment right was a "critical stage" of Jordan's trial for purposes of the Cronic exception.

[5] Jordan also appears to argue that he was denied the effective assistance of counsel when his attorney failed to request an in-camera hearing to determine whether Feazell could provide at least some testimony that would not run afoul of his right against self-incrimination. But Jordan has waived this ineffective-assistance claim because he did not raise it in the trial court. In any event, this claim is not subject to the Cronic exception, and so Jordan must show Strickland prejudice to prevail. This he fails to do, as he does not explain why Feazell could be forced to testify or how his testimony could have helped the defense. See Roberts v. State, 296 Ga. 719, 724 (2) (770 SE2d 589) (2015) ("To satisfy the second Strickland prong of prejudice requires that [defendant] demonstrate the reasonable probability that, absent the claimed professional errors by counsel, the result of his trial would have been different.").