**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**August 26, 2022**

# In the Court of Appeals of Georgia

A22A0989. SCOTT v. THE STATE.

McFADDEN, Presiding Judge.

Anthony James Scott was tried before a jury on charges of serious injury by vehicle, homicide by vehicle, speeding, and reckless driving. Before the jury returned a verdict, the trial court granted Scott's motion for a mistrial on the ground that the state had failed to disclose material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963). Scott then filed a plea in bar, arguing that a second trial would constitute double jeopardy. The trial court denied Scott's plea. He filed this direct appeal in reliance on the collateral order

doctrine.[1] Scott argues that the state intentionally goaded him into moving for a mistrial, so retrial is barred. We disagree. So we affirm.

> When a mistrial is granted at the defendant's request due to prosecutorial misconduct, the general rule is that the Double Jeopardy Clause does not bar the [s]tate from retrying the case. There is a narrow exception where the prosecutorial misconduct was intended to goad the defendant into moving for a mistrial. However, in order to prevail on such a claim the defendant must show that the [s]tate was purposefully attempting through its prosecutorial misconduct to secure an opportunity to retry the case, to avoid reversal of the conviction because of prosecutorial or judicial error, or to otherwise obtain a more favorable chance for a guilty verdict on retrial.

*State v. Traylor*, 281 Ga. 730, 731-732 (642 SE2d 700) (2007) (citations and punctuation omitted). The trial court acts as the factfinder in determining whether a prosecutor intended to goad the defendant into moving for a mistrial, and the court's "resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous." *Roscoe v. State*, 286 Ga. 325, 327 (687 SE2d 455) (2009) (citation and punctuation omitted). "[W]e will not reverse the factual findings of the court below if there is any evidence to support them, and this holds true even if the findings are

---

[1]"[T]he appeal of a denied plea of double jeopardy is subject to the collateral order doctrine." *Carman v. State*, 304 Ga. 21, 25 (1) (815 SE2d 860) (2018).

2

based upon circumstantial evidence and the reasonable inferences which flow from them." *Yarbrough v. State*, 303 Ga. 594, 596-597 (2) (814 SE2d 286) (2018) (citation and punctuation omitted).

Viewed with these principles in mind, the record shows the following. On the night of September 26, 2015, Scott, then a Georgia State Trooper, was driving in his patrol car on Highway 27 headed north. Scott was speeding, although he was not responding to a call. Another driver was headed south on Highway 27, driving a Nissan Sentra with three passengers. As the other driver proceeded to turn left across the highway, Scott's patrol car collided with the Nissan. Two of the Nissan passengers were killed, and the other passenger and the driver suffered severe injuries.

Scott's trial began on May 13, 2019, and the jury began deliberations on May 20. That evening, defense counsel learned of something that led to his allegation of the *Brady* violation. Specifically, counsel learned that the two state troopers who had investigated the incident had developed a new theory based on an enhanced version of Scott's dash cam video. This theory was that one of the decedents in the Nissan may have been seated in or leaning forward into the front passenger compartment of the Nissan, rather than in the backseat as previously thought. The troopers concluded

3

that this new theory was relevant to the cause of the collision because of the possibility that the decedent had obstructed the driver's view as he turned left into the path of Scott's patrol car. The trial court concluded[2] that the state's failure to turn over the new theory to the defense was based on a misunderstanding of the law and amounted to a *Brady* violation, and it granted Scott's motion for mistrial over the state's objection.

Scott argues that the state goaded him into moving for a mistrial because the state did not believe it could secure an appeal-proof conviction. But the trial court found otherwise. Among other things, the court looked to the circumstances surrounding the jury deliberations — where the state repeatedly urged the court to allow the jury to continue deliberations, even after learning of the jury's difficulty in reaching a unanimous verdict — as evidence of the state's intent. As the trial court found, the jury received the case at 11:15 a.m. on Monday, May 20, 2019. The jury deliberated, and the court recessed for that day. Deliberations resumed the next morning, and at some point, the jury sent a note stating that, "We have decided on

---

[2]Whether the trial court correctly concluded that the state violated *Brady* by failing to turn over to the defense the investigating troopers' new theory is not before us.

two counts and are undecided on four of the counts. No possibility of unanimous decision."

The parties agreed that it was premature to give an *Allen* charge, see *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896), so the trial court instructed the jury to continue deliberating. Before recessing for lunch, the court asked for a numerical vote count for each count of the indictment, without an indication of whether the votes were guilty or not guilty. The vote was: count one, five to seven; count two, seven to five; count four, ten to two; count five, ten to two; count six, twelve to zero; and count seven, twelve to zero. (Count three had been nolle prossed.)

The jurors continued deliberating after lunch, and around 2:17 p.m. sent a note that they were deadlocked and that "[t]here is no chance or possibility of this changing." With the assent of the parties, the court asked the foreman whether there had been any movement in the vote counts, and he answered that there had been. The new vote count was: count one, eight to four; and count two, eight to four. The remainder of the counts had the same vote count as before. The court instructed the jurors to continue deliberating and they did so until the court recessed for the evening.

5

The next morning, the defense made its motion for a mistrial. The state opposed the motion, arguing that the *Brady* criteria had not been met. The court heard testimony from the two troopers who had changed their theory. The state cross-examined them, and then, as the trial court found in the order denying the plea in bar, "strenuously argued that Scott had failed to meet his burden to prove a *Brady* violation, that the court should deny the mistrial motion, and that the court should bring the jury back and allow them to continue to deliberate to a verdict."

The court recessed the deliberations for two days. When proceedings resumed, the court granted the motion for mistrial and dismissed the jury. The state noted its objection on the record and filed a written objection.

When assessing Scott's plea in bar, the trial court found that the prosecutors consistently requested that the jurors continue deliberations to reach a verdict, even after having learned that the jury was split, and argued against mistrial. The court concluded that the record was "wholly inconsistent with the allegation of intentional goading." Scott has not shown that the trial court clearly erred in finding that the state did not intend to goad him into moving for a mistrial. See *Yarbrough*, 303 Ga. at 597 (2).

Scott argues that the trial court should have granted his plea in bar to punish the state for its abuses of Scott's rights. But as the trial court held, Scott has cited no authority for the proposition that a court may grant a plea in bar to punish the state, rather than to vindicate a defendant's right against double jeopardy where the state has attempted to subvert it.

"[W]e cannot say the trial court clearly erred in finding that the prosecution did not intend to goad the defense into moving for a mistrial, and we therefore affirm the denial of [Scott's] plea in bar." *Yarbrough*, 303 Ga. at 597 (2).

*Judgment affirmed. Gobeil and Land, JJ., concur.*