S06A2163. THE STATE v. TRAYLOR et al.
(642 SE2d 700)

CARLEY, Justice.

Maricus Traylor and Sherila Carmichael (Appellees) were indicted for murder and other offenses. After admitting that he fired a rifle, but claiming that he did so in self-defense, Traylor led police to the location where he had hidden the weapon. At trial, the assistant district attorney, Jason Green, entered into a written stipulation with defense counsel regarding the chain of custody for Traylor's gun and other items of evidence. Thereafter, Green presented a rifle to an expert witness for the State, who testified that it was not the alleged murder weapon. The prosecutor informed defense counsel that the rifle used by Traylor was missing, and the trial court granted a mistrial pursuant to a defense motion. The District Attorney's office subsequently located the rifle. The trial court later granted a plea in bar, based on double jeopardy, although it found the following:

> Green relied on other staffers within the District Attorney's office, including but not limited to his investigator. The transcript and Mr. Green's surprise, confirm that [he] first discovered the State did not have possession of the rifle at issue . . . while [he] was opening the box to present the rifle

to the GBI firearms examiner. Mr. Green brought the matter to the attention of the defense, the court and the jury by his questioning of the firearms examiner. . . . The Court can not discern whether or not Mr. Green intended to goad the defense into moving for a mistrial.

The trial court based its grant of the plea in bar on the finding that staff members of the District Attorney's office were aware that the rifle could not be located, but failed to bring this fact to Green's attention, even though they were present during trial and knew or should have known about the stipulation and the fact that the defense was calling a firearms expert of their own. The trial court held as follows:

Withholding this information under these circumstances should be imputed to the Assistant District Attorney, in much the same way that documents "possessed by the prosecutor or anyone over whom the prosecutor has authority" are attributed to the State and must be disclosed in compliance with *Brady v. Maryland*, 373 U. S. 83 [(83 SC 1194, 10 LE2d 215)] (1963). See *Zant v. Moon*, 264 Ga. 93, 100 [(440 SE2d 657)] (1994).

The trial court further stated that it "is not a mind reader in the instant case and can not divine whether the State hoped for another bite at the apple, and additional time to locate the actual weapon, when the motion for mistrial ensued." Nevertheless, finding that the State benefitted from the mistrial and had caused the case to linger an excessively long time, the trial court concluded that, in the totality of circumstances, the State had acted "in such a manner as to harass [Appellees], to deprive [them] of evidence needed in their defense, to fail to marshal the State's evidence in the initial trial, such that the provisions of double jeopardy should bar a retrial in this case." The State appeals from the trial court's order granting the plea in bar.

When a mistrial is granted at the defendant's request due to prosecutorial misconduct, the general rule is that the Double Jeopardy Clause does not bar the State from retrying the case. *Weems v. State*, 268 Ga. 142, 143 (2) (485 SE2d 767) (1997); *Hardy v. State*, 258 Ga. 523 (371 SE2d 849) (1988). "There is a 'narrow exception' where the prosecutorial misconduct was intended to goad the defendant into moving for a mistrial. [Cit.]" *Weems v. State*, supra. However,

in order to prevail on such a claim the defendant must show that the State was purposefully attempting through its prosecutorial misconduct to secure an opportunity to retry

the case, to avoid reversal of the conviction because of prosecutorial or judicial error, or to otherwise obtain a more favorable chance for a guilty verdict on retrial. [Cit.]

*Davis v. State*, 278 Ga. 305, 306 (1) (602 SE2d 563) (2004). The bar of double jeopardy is not raised by even intentional prosecutorial misconduct, " 'notwithstanding the fact that the defendant was thereby deprived of due process of law, unless the prosecutor's actions were intended to subvert the protections afforded by the Double Jeopardy Clause. (Cits.)' [Cit.]" *Dinning v. State*, 267 Ga. 879, 881 (485 SE2d 464) (1997).

Perhaps the most heinous form of prosecutorial misconduct, which also constitutes one type of *Brady* violation, consists of the prosecutor's knowing use of perjured testimony to obtain a conviction, and, even in that situation, retrial has not been held to be barred by the Double Jeopardy Clause. [Cits.]

*Williams v. State*, 258 Ga. 305, 312 (1) (A) (369 SE2d 232) (1988).

The fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial. (Cits.) Yet the blunder will almost always be intentional — the product of a deliberate action, not of a mere slip of the tongue. . . . (U)nless (the prosecutor) is (intentionally) trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is (the) intent to terminate the trial, not (the) intent to prevail at . . . trial by impermissible means. [Cit.]

*Williams v. State*, 268 Ga. 488, 490 (491 SE2d 377) (1997).
Contrary to the trial court's analysis, the rule whereby constructive knowledge is attributed to the prosecutor pursuant to *Brady* is not applicable to the double jeopardy issue of whether there was intentional prosecutorial misconduct designed to produce a mistrial. *State v. Wittsell*, 66 P3d 831, 839 (Kan. 2003); *State v. Zamora*, 538 S2d 95, 96 (Fla. App. 1989). Consistent with the overwhelming weight of authority, we have held that even if a detective intentionally frames his testimony on behalf of the State so as to goad the defense into seeking a mistrial, his instigative intent will not be imputed to the prosecutor. *Weems v. State*, 269 Ga. 577, 580 (4) (501 SE2d 806) (1998). See also *State v. Barnes*, 222 Ga. App. 875 (476 SE2d 646)

(1996); *Ex parte Washington*, 168 SW3d 227, 238 (Tex. App. 2005) ("every federal or state court that has addressed the issue . . . has rejected such imputation. [Cits.]"); *State v. Jaimes*, 715 NW2d 669, 673 (Wis. App. 2006) (following other jurisdictions and rejecting imputation in the absence of collusion).

For double jeopardy to apply, it is not sufficient that an intent to instigate a mistrial was possessed only by an agent of the State whose scope of employment and authority differs from the prosecutor, since "the 'narrow exception,' above articulated, was not meant to be extended to embrace conduct other than that of the judge and the prosecutor." *State v. Maddox*, 185 Ga. App. 674, 676 (365 SE2d 516) (1988). Where, as here, the trial court does not find that the person in control of the prosecution instigated the misconduct either directly or through collusion in order to goad the defendant into moving for a mistrial, double jeopardy does not bar retrial, as it " 'would be too simplistic to reach out and ensnare within the term "prosecutor" every [state] agent involved in a criminal matter, including those involved in the collection of evidence and the preparation for trial . . . .' [Cits.]" *Commonwealth v. Deloney*, 20 SW3d 471, 475 (II) (Ky. 2000) (quoting *United States v. Green*, 636 F2d 925, 928 (4th Cir. 1980) and citing both *Barnes* and *Maddox*). Compare *State v. Thomas*, 275 Ga. 167 (562 SE2d 501) (2002) (although trial court's personal knowledge of the prosecutor caused it to believe him, the trial court nevertheless specifically found, based on the objective facts and circumstances, that the prosecutor intended to goad the defendant into moving for a mistrial).

Even if the conduct of the investigator and other staff could be imputed to Green, there is not any evidence that those persons intended to goad Appellees into moving for a mistrial, rather than to enhance the likelihood of their conviction. See *State v. Maddox*, supra. Indeed, after reviewing the misconduct of the staff members, the trial court specifically declined to find that the State hoped for a mistrial. Compare *State v. Thomas*, supra.

The dissent takes an approach which is completely different from the trial court's, by finding that, contrary to the assessment reached by the trial court, the personal knowledge of the prosecutor demands the conclusion that he intentionally goaded Appellees into moving for a mistrial. However, there is considerable evidence that Green's knowledge was inferior to his investigator's and, thus, considerable evidence to support the trial court's conclusion that it could not determine that Green had the requisite intent to cause a mistrial. As the dissent partially acknowledges, Green expressed confidence, consistent with his prior experience, that the weapon would be located since office logs showed that it was in the evidence room. He also testified that, until beginning direct examination of the State's

firearms expert, he did not know that the actual rifle had not been found. Although the dissent discounts Green's belief as a mere assumption, what a person assumes is obviously relevant in proving his subjective intent. Thus, Green's testimony was relevant to prove that, although he may have been guilty of prosecutorial misconduct, he was not attempting to provoke a mistrial. Likewise relevant, and not spurious, was Green's belief that the weapon was not essential to the overall prosecution in light of Traylor's videotaped statement that he used a rifle in self-defense. Furthermore, Green emphatically denied that he intended to cause a mistrial. Accordingly, the trial court clearly was authorized to refuse to find that Green had personally intended to goad the defense into moving for a mistrial. The trial court's " 'resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous. (Cits.)' " *Davis v. State*, supra. The dissent does not find that the trial court's inability to find Green's intent to cause a mistrial is clearly erroneous. It simply assumes the role of determining the credibility of Green's testimony. Even if Green's knowledge was equivalent to that of his investigator or some other staff member, there is not any evidence to support, much less did the evidence demand, a finding that Green intended to terminate the trial, rather than enhance the likelihood of conviction. Without such evidence, a prosecutorial blunder does not invoke the protections of the Double Jeopardy Clause. *Williams v. State*, 268 Ga., supra at 490-491.

Appellees sought and were granted the remedy of a mistrial. "We see no need to add gratuitously the extreme sanction of double jeopardy in the absence of genuine prosecutorial overreaching or similar judicial [mis]conduct." *State v. Maddox*, supra. See also *State v. Barnes*, supra at 877. Whether the State's conduct in this case has resulted in delay chargeable to the prosecution upon retrial, or whether Appellees have another available avenue for seeking redress for that conduct "are matters currently not before this court. Suffice it to say, that the [A]ppellee[s'] remedy does not lie under the protective mantle of double jeopardy." *State v. Maddox*, supra.

*Judgment reversed. All the Justices concur, except Thompson, J., who dissents.*

THOMPSON, Justice, dissenting.

Because the evidence unequivocally discloses that assistant district attorney Green had direct knowledge prior to trial that the SKS rifle could not be produced, and he intentionally concealed that information from the court and the defense and offered contrary evidence to the jury, I must conclude that such misconduct was intended to goad defendants into moving for a mistrial. I therefore respectfully dissent.

Green testified at the hearing on the plea in bar that on Thursday, March 30, 2006, five days prior to the start of trial on Monday, April 3, 2006, he requested that his investigator retrieve the evidence for trial from the evidence room. At some point between Thursday and Monday, Green became "aware that the weapon had either been lost or misplaced," and he acknowledged he "got just about everything *except the SKS [rifle] that's the subject of this*." He did not, however, notify the court or the defense that the evidence was missing for two stated reasons: first, he was confident that the weapon ultimately would be located; and second, he did not think that the weapon "was important," but was merely "gravy for [his] case."

Because of the absence of the evidence, Green instructed his investigator to come up with an alternative weapon to use as a demonstrative device at trial. Green testified that when the case was called for trial, he had not spoken with his investigator to determine whether she had been able to find a replacement, and he did not know whether the actual rifle had been located.[1] Nonetheless, Green urged the defense to enter into a written stipulation falsely setting forth the chain of custody, as follows: "all firearms and their parts that were located in this case have been properly collected, preserved and transported to preserve their integrity." In his opening statement, Green referenced the stipulation concerning the ballistics materials, noting that the SKS rifle was "part of the stipulation between the parties and there is no question about that." The full stipulation was published to the jury on the fourth day of trial.

Thus, unlike the position of the majority and the finding of the trial court,[2] this is not a case of constructive or imputed knowledge. Admittedly, Green knew that the evidence was missing — his stated belief that it would be found is, at best, a mere assumption, and his explanation that it was inconsequential to the case is spurious.[3]

The appellate standard of review of a grant of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its

---

[1] Green's investigator testified that she informed Green prior to trial that she had located another rifle in the evidence room which was "similar but not the one that was allegedly used in a crime scene," and just as Green stood up to begin his direct examination of the State's firearms expert, he turned to the investigator and asked, "Look, is this the real weapon," to which she replied, "no."

[2] In this regard, the trial court found: "Mr. Green first discovered the State did not have possession of the rifle at issue . . . until the fourth day of the jury trial, while Mr. Green was opening the box to present the rifle to the GBI firearms examiner."

[3] In addition to charges of murder and aggravated assault, Traylor was indicted and tried for possession of a rifle by a convicted felon. Although in pretrial proceedings, Traylor sought more particulars about the rifle referred to in the indictment, none were forthcoming. Presumably, that was the rifle which the State could not produce at trial.

conclusion that the double jeopardy bar applied. *Beck v. State*, 261 Ga. 826, 827 (412 SE2d 530) (1992). While the trial court refused to find actual knowledge of the missing evidence, the undisputed evidence of record demands that conclusion. Accordingly, the trial court's "resolution of the factual issues . . . is clearly erroneous." *Davis v. State*, 278 Ga. 305, 306 (1) (602 SE2d 563) (2004). Thus, I must conclude that the objective facts support a finding that the prosecutor intentionally goaded the defendants into moving for a mistrial, and "purposefully attempt[ed] through its prosecutorial misconduct to secure an opportunity to retry the case, to avoid reversal of the conviction because of prosecutorial or judicial error, or to otherwise obtain a more favorable chance for a guilty verdict on retrial," *Davis*, supra at 306, and a retrial is precluded by the Double Jeopardy Clause.

DECIDED MARCH 19, 2007.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellant.

*Conner & Conner, Stacie A. Conner, Drew Findling*, for appellees.