303 Ga. 594
FINAL COPY

S18A0113. YARBROUGH v. THE STATE.

BLACKWELL, Justice.

In January 2017, a Fulton County jury was empaneled to try Travis Yarbrough for murder and other crimes. Before the State rested its case, Yarbrough moved for a mistrial, alleging prosecutorial misconduct in the direct examination of a witness. The trial court declared a mistrial, and Yarbrough then filed a plea in bar, asserting that a retrial would subject him unconstitutionally to double jeopardy. The trial court denied the plea in bar, and Yarbrough appeals. We affirm.

1. On the evening of September 28, 2010, a group of gunmen invaded a private residence in Atlanta, robbed the occupants of the home at gunpoint, and fired several shots, killing Aaron Holloway and wounding Charles Pegues and others. Two days later, investigators presented Pegues with two photographic lineups, one containing a photograph of Yarbrough, and the other containing a

photograph of Brandon Philpot. Pegues identified the photographs of Yarbrough and Philpot as depictions of two of the gunmen, and he marked the photographic lineups accordingly. Yarbrough and Philpot were indicted and charged with a number of crimes, including murder, armed robbery, burglary, and aggravated assault. Yarbrough and Philpot were put on trial together for these charges.

The case against Yarbrough depended substantially on Pegues, and he was called by the prosecution as its first witness at the trial. In his testimony, Pegues talked about the group of gunmen that invaded the home on the night in question. Pegues described a gunman in a white t-shirt and a gunman in a red hat. He also said that two of the men — Philpot and a man known to Pegues only as "Uptown" — had visited the home before and were familiar to him. Significantly for purposes of this appeal, it appears to be undisputed that Yarbrough is not "Uptown," although the record gives some reason to think that they look alike.

The prosecution ran into trouble when it tried to get Pegues to positively identify Yarbrough in court. To begin, the prosecuting attorney introduced the Yarbrough photographic lineup, and Pegues confirmed that the photograph marked on that lineup depicted the gunman in the white t-shirt. But when the

2

prosecuting attorney asked if Pegues saw the same man in the courtroom, Pegues stood, looked around the courtroom, and replied "no." Surprised by this response, the prosecuting attorney then turned to the Philpot photographic lineup. Pegues confirmed that he had identified a photograph of Philpot as depicting one of the gunmen, and he then identified Philpot in the courtroom. At that point, the prosecuting attorney turned his attention back to Yarbrough. Upon further examination, Pegues testified that, when he had spoken with investigators, he told them that "Uptown" was the gunman in the white t-shirt. The prosecuting attorney confronted Pegues with a transcript of his police interview, in which Pegues apparently admitted that he was not 100 percent certain that the man in the white t-shirt was "Uptown." But Pegues refused to confirm that admission and continued to insist that he had identified "Uptown" as the gunman in the white t-shirt.

Switching tactics, the prosecuting attorney asked Pegues whether the photograph marked on the Yarbrough lineup was a photograph of "Uptown." Pegues answered, "No." The prosecuting attorney then pointed at Yarbrough (who was seated at the defense table) and asked, "Is that this person here, sitting here today?" Yarbrough's lawyer objected immediately, and at the same time,

3

Pegues answered, "Yes." The trial court sustained the objection, and then, outside the presence of the jury, Yarbrough and Philpot moved for a mistrial. In response, the prosecuting attorney explained that he had pointed to Yarbrough intentionally, but he argued that it was not improper because the marked photograph on the Yarbrough lineup was, at least in his view, clearly a photograph of Yarbrough. The trial court declared a mistrial.

A few days later, both Yarbrough and Philpot filed pleas in bar. At the hearing on those pleas, the court heard from the prosecuting attorney and his supervisor. According to the prosecuting attorney, Pegues was the only witness who could identify Yarbrough with more than 35 percent certainty. There was little physical evidence directly connecting Yarbrough to the crime scene — only a hat that was found not far from the crime scene that contained a hair fiber consistent with Yarbrough's hair. When the prosecuting attorney had trouble getting Pegues to identify Yarbrough at trial, he sought advice from his supervisor about how to proceed. The supervisor suggested that he ask Pegues whether the person he had identified in the lineup was "Uptown," whether the defendant was the same person, and whether Pegues knew Yarbrough. The supervisor also suggested that he gesture toward Yarbrough. But, the supervisor

testified, the prosecuting attorney "didn't do quite like I had asked him to do." Furthermore, the prosecuting attorney admitted that he had faced Yarbrough's lawyer in other cases, and that he knew that she would move for a mistrial if she felt there was anything wrong.

At the conclusion of the hearing, the trial court denied Yarbrough's plea in bar, explaining:

> I was present, I was observing the parties and counsel and their demeanor; and I observed [the prosecuting attorneys]' demeanor when he heard my ruling declaring a mistrial. It was one of disappointment, as I interpreted his demeanor. Frustration that he was not able to go forward. I, therefore, find there's no bad faith, that he did not do what prompted my ruling of a mistrial to goat [sic] the defendant into making a motion for mistrial.

2. Where a mistrial is granted on the motion of the defendant, the principle of double jeopardy generally will not bar a retrial unless the defendant demonstrates that the prosecution intentionally goaded the defendant into moving for a mistrial. Weems v. State, 269 Ga. 577, 580 (4) (501 SE2d 806) (1998). To that end, the defendant must show that "the State was purposefully attempting through its prosecutorial misconduct to secure an opportunity to retry the case, to avoid reversal of the conviction because of prosecutorial or judicial error, or to otherwise obtain a more favorable chance for a guilty verdict on

5

retrial." Davis v. State, 278 Ga. 305, 306 (1) (602 SE2d 563) (2004). The key issue is not whether the prosecutor acted improperly, or even how egregious the misconduct was, but rather, what objective the prosecuting attorney was trying to achieve. Dinning v. State, 267 Ga. 879, 880 (485 SE2d 464) (1997). "Unless a prosecutor [was] trying to abort the trial, his or her misconduct will not prohibit a retrial." Id. at 881. See also Williams v. State, 268 Ga. 488, 490 (491 SE2d 377) (1997).

Furthermore, to determine whether the prosecutor intended to goad the defendant into moving for a mistrial, a trial court must "make a finding of fact by inferring the existence or nonexistence of intent from objective facts and circumstances." Davis, 278 Ga. at 306 (1) (citation and punctuation omitted). And we review the trial court's factual findings under the highly deferential "clear error" standard. Id. at 306-307 (1). This means that we will not reverse the factual findings of the court below "if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them." Id. (citation and punctuation omitted). See also Roscoe v. State, 286 Ga. 325, 327 (687 SE2d 455) (2009).

In this case, the trial court's observation of the prosecuting attorney's demeanor led it to conclude that he did not want or intend a mistrial to occur. We have no reason to doubt the accuracy of the trial court's assessment, which is consistent with the record. The relevant transcripts show that the direct examination of Pegues did not proceed as planned and that the prosecuting attorney gestured toward Yarbrough only after a frustrated attempt to get Pegues to identify Yarbrough in court as one of the assailants, and only after consulting with his supervisor. Obtaining a positive identification from Pegues was critical to the State's case, and it was this identification — not a mistrial — that seems to have been the main goal of the prosecution. Thus, we cannot say the trial court clearly erred in finding that the prosecution did not intend to goad the defense into moving for a mistrial, and we therefore affirm the denial of Yarbrough's plea in bar. See <u>Davis</u>, 278 Ga. at 306 (1); <u>Dinning</u>, 267 Ga. at 880.[1]

<u>Judgment affirmed. All the Justices concur.</u>

---

[1] We express no opinion as to whether the prosecutor's act of pointing toward Yarbrough was, in fact, improper or whether it merited a mistrial.

Decided May 7, 2018.

Murder. Fulton Superior Court. Before Judge Brantley, Senior Judge.

Jennifer S. Hanson, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.