306 Ga. 626
FINAL COPY

S19A0646.  THE STATE v. JACKSON.

PETERSON, Justice.

The trial court granted a mistrial in the murder case against Monquez Jackson, finding that the prosecutor's closing argument included an improper comment on matters not in evidence. After making extensive findings that the prosecutor made that improper comment intentionally in hopes that the comment would lead to a mistrial, and thus an opportunity to retry the case, the trial court determined that double jeopardy prohibited the State from retrying Jackson. The State appeals. We conclude that the trial court did not abuse its considerable discretion in granting the mistrial. We also conclude that the trial court's factual findings supported its jeopardy ruling, and that those findings must stand given the deference we afford them. We affirm.

Jackson was indicted with co-defendants Sade Britt (his wife), Dwayne Britt (Sade's brother), and Tomeka Porter for various

crimes against Anthony Westbrook. Jackson alone was charged with malice murder, while he, Sade, and Dwayne were charged with felony murder, armed robbery, conspiracy to commit armed robbery, kidnapping, financial transaction card theft, financial transaction card fraud, and theft by taking. Porter was charged only with conspiracy to commit armed robbery. Prior to Jackson's trial, his three co-defendants all entered into agreements with the State, with the Britts pleading guilty to certain non-murder crimes and the State saying it would dismiss the charge against Porter after she testified.

Sade testified at trial that Jackson shot Westbrook after Jackson held Westbrook at gunpoint and she used Westbrook's ATM card to withdraw money from his bank account. Sade testified that Dwayne was also present when she made the ATM withdrawals and was nearby when Westbrook was shot. Sade testified that Porter and Jackson dropped her off near Westbrook's van a few days later so that Sade could attempt to clean the vehicle of any inculpatory evidence.

Dwayne also testified for the State, but his testimony differed from his sister's in several respects. Dwayne said that he was high on drugs and did not see Jackson with a gun that night. As summarized by the district attorney before the trial court, Porter stated in a pre-trial allocution under oath that Sade had confessed to killing Westbrook. But Porter did not testify at Jackson's trial.

This appeal concerns the State's handling of its failure to call Porter to testify. The DA served as lead counsel for the State at trial. The defense made multiple hearsay objections at trial as to statements allegedly made by Porter; for instance, a hearsay objection was sustained by the trial court when the State attempted to introduce prior statements by Porter during the direct testimony of the State's lead investigator.[1] After the close of evidence, the State made an oral motion seeking to preclude the defense from making any reference to Porter during its closing arguments, adding that

---

[1] At the time, the DA represented to the trial court, "I may or may not call Ms. Porter." He later testified at the hearing on the plea in bar that he "had no intentions of calling" her because he "anticipated that [she] was going to try to aid Mr. Jackson."

the State would say nothing about her other than that "the State elected not to call her." Jackson's lawyer responded that she should be able to "talk about what [the DA] said in his opening statement, that he planned to call her and that her charges have already been resolved." The trial court agreed with the defense that the defense could "refer back to what was said in opening."[2] The discussion concluded when the DA withdrew his motion and said that he would "just adjust [his] argument accordingly."

In her closing argument, defense counsel noted that the State had not called Porter to testify, adding, "I wonder what she would have had to say." In his closing, the DA stated the following:

> Everything is not needed to be proven. Every witness doesn't need to be called. You have got direct evidence. There is other evidence through testimony that has told you what happened. Even Tomeka Porter, all she could tell you is[,] "yeah, we went back to the car to clean it up." You have got the evidence to support that already that that happened. That is corroborated. Tomeka Porter wasn't needed. All she can do is say, "Yeah, I went back and I saw her clean up the car."

---

[2] In fact, although the DA mentioned Porter several times in his opening statement, including that she had received her "day in court," he did not tell the jury that he planned to call her to testify.

4

The defense promptly objected on the basis that the State was arguing facts not in evidence. The trial court agreed with the State that its statement to the jury about Porter was a reasonable inference from Sade's testimony, but ruled that it would instruct the jury that it could not consider any suggestion about what Porter would have said had she testified. After a short recess, the defense moved for a mistrial based on prosecutorial misconduct. After arguments of counsel and multiple breaks, the trial court granted the motion pursuant to OCGA § 17-8-75, saying a curative instruction was insufficient.

Jackson filed a "Plea of Double Jeopardy, Plea in Bar, and Motion to Dismiss," arguing that a retrial would constitute double jeopardy because the State's closing argument was an attempt to goad defense counsel into seeking a mistrial so that the State could retry the case. After a hearing, the trial court granted Jackson's motion, citing the DA's "shifting and conflicting explanations" as to his closing argument — which the trial court said "was in violation of the Court's order on the District Attorney's own motion in limine"

— and noting that it had admonished the DA three times prior to his closing argument that he should not inject Porter's statements into the trial without first calling her to testify. The court cited the "certainly not overwhelming" evidence presented against Jackson, particularly given the "glaring inconsistencies" between the testimony of Sade and Dwayne and the lack of corroboration of their testimony. And the court cited the DA's considerable experience as indicating that the DA would be well aware that his comments would lead to a mistrial, noting that the DA was also in that role when we reversed an aggravated assault conviction out of his circuit because of the trial court's failure to take appropriate action in response to another prosecutor addressing matters outside of the record during closing argument. See *Jones v. State*, 292 Ga. 656, 660-662 (2) (740 SE2d 590) (2013). The State appeals, arguing that the trial court erred both in ordering a mistrial and granting the plea in bar.

1. The State argues that the trial court abused its discretion in ordering a mistrial. We disagree.

"Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same . . ." OCGA § 17-8-75. On objection, the trial court has the discretion to order a mistrial if the prosecutor is the offender. Id. A decision whether to grant a mistrial based on an improper argument is reserved to the broad discretion of the trial court.  See *Harvey v. State*, 296 Ga. 823, 831 (2) (a) (770 SE2d 840) (2015). The question of whether a remedy for an improper comment during closing argument is sufficient depends on the degree of prejudice created by the comment. See *Jones*, 292 Ga. at 662 (2). And assessing that degree of prejudice involves consideration of the weight of the evidence. See id. (finding that general instruction about arguments not being evidence was an inadequate cure for prosecutor's improper argument where evidence was not overwhelming). "A trial judge's decision to declare a mistrial based on his assessment of the prejudicial impact of improper argument is entitled to great deference on appeal, and we will affirm the trial court's rejection of possible alternatives to a mistrial if

7

reasonable judges could differ about the proper disposition." *Harvey*, 296 Ga. at 835 (2) (d) (citations and punctuation omitted).

The State argues that the trial court erred in ordering a mistrial because the comment at issue was both a reasonable inference from the evidence and an invited response to the defense's reference to Porter in closing. The State notes that, when the defense objected to the State's argument, the trial court's initial response was to agree with the State that its argument was a reasonable inference from Sade's testimony. But the trial court also indicated that it would instruct the jury that it could not consider any suggestion as to how Porter might have testified. And it would not be reasonable for the jury to assume from Sade's testimony "all" of what Porter would have said had she testified.

As for the State's argument that the DA's statements amounted to a permissible invited response, the cases the State relies on do not hold that it is *proper* for a prosecutor to reference matters not in evidence simply because the reference is responsive

8

to a defense argument.[3] Rather, we have said that such prosecutorial comments ordinarily are not *prejudicial* "if, taken in context, they were 'invited' by defense counsel's opening salvo and *did no more than* respond substantially in order to right the scale." *Powell v. State*, 291 Ga. 743, 749 (2) (b) (733 SE2d 294) (2012) (citation and punctuation omitted; emphasis added). Here, the State's argument went beyond a response that "right[ed] the scale." In its closing argument, the defense noted that the State did not call Porter to testify, and the defense appeared to invite the jury to consider what Porter might have said had she testified. The State did not respond to the defense argument by telling the jury that it ought not speculate about what Porter would have said if she testified. Instead, the State purported to tell the jury "all" that Porter would have said had she testified — while omitting that Porter had said that Sade had confessed to killing Westbrook. Although the State

---

[3] Indeed, in the decision most heavily relied on by the State, we said that the "invited" remarks at issue — in which the prosecutor implied in her closing argument that prosecutors seek the indictment only of guilty people — were "highly improper." See *Powell v. State*, 291 Ga. 743, 745-746 (2) (733 SE2d 294) (2012).

9

contends that its comments about what Porter would have said if called to testify were not prejudicial because they did not implicate Jackson in particular and addressed events that occurred after the murder, the trial court concluded that the State's argument effectively introduced a statement by Porter that the jury might view as providing corroboration of the testimony of Sade, Jackson's accomplice, while omitting Porter's significant exculpatory pretrial statement. Finding that the evidence presented against Jackson at trial was not overwhelming, the trial court concluded that the State's comments were so prejudicial as to create an unfair trial for Jackson. Indeed, at the hearing on the plea in bar, the DA acknowledged that the State's lead investigator testified at trial both (1) that there was no physical evidence to connect Jackson to the victim's vehicle or the crime and (2) that law enforcement was unable to corroborate any of Sade's statements regarding Jackson's involvement, and the DA also acknowledged that the only witnesses who provided testimony about Jackson's involvement were his co-defendants Sade and Dwayne and that there were several

inconsistencies between the testimony of those two witnesses. The trial court was in the best position to judge the possible prejudicial impact of the State's argument. See *Varner v. State*, 285 Ga. 334, 336 (676 SE2d 209) (2009). The State has not shown that the trial court abused its discretion in ordering a mistrial.

2. The State also argues that the trial court erred in granting the plea in bar. Given the deference we afford to the trial court's factual findings underlying its ruling, we cannot conclude that the trial court erred.

"Throughout history, people have worried about the vast disparity of power between governments and individuals, the capacity of the state to bring charges repeatedly until it wins the result it wants, and what little would be left of human liberty if that power remained unchecked." *Gamble v. United States*, ___ U.S. ___ (139 SCt 1960, 1996, 204 LE2d 322) (2019) (Gorsuch, J., dissenting). As a result, both the United States and Georgia Constitutions prohibit the government from placing a defendant "in jeopardy" more than once for "the same offense." See U.S. Const. Amend. V

11

("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]"); Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial.").[4]

Although the Fifth Amendment's Double Jeopardy Clause generally does not bar the State from retrying a case after a mistrial

---

[4] Jackson asserted both federal and Georgia constitutional arguments in the trial court, but the trial court's ruling references only the United States Constitution. We note that the text of the federal and Georgia constitutional provisions differed slightly the first time that a double jeopardy provision entered the Georgia Constitution. Compare Ga. Const. of 1861, Art. I, Par. 12 ("No person shall be put in jeopardy of life or liberty more than once for the same offence.") with U.S. Const. Amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb[.]"). This difference grew with the addition of the phrase "in case of mistrial" in 1865. See Ga. Const. of 1865, Art. I, Par. 9 ("No person shall be put in jeopardy of life or liberty more than once for the same offense, save on his or her own motion for a new trial after conviction, or in case of mistrial."). A substantially identical provision has appeared in every Georgia Constitution since. See Ga. Const. of 1868, Art. I, Sec. 8; Ga. Const. of 1877, Art. I, Sec. I, Par. VIII; Ga. Const. of 1945, Art. I, Sec. I, Par. VIII; Ga. Const. of 1976, Art. I, Sec. I, Par. XV; Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII. Given these textual differences, it is possible that the federal and state provisions carry different meanings. But the parties do not draw any meaningful distinctions between the two provisions in their arguments before this Court, and we need not consider any such distinctions given our resolution of this appeal in Jackson's favor under the federal provision. We also note that the Georgia Code imposes double-jeopardy-type restrictions on prosecutions that exceed those of the federal Constitution as interpreted by the United States Supreme Court. See OCGA § 16-1-8.

is granted at the defense's request due to prosecutorial misconduct, a retrial may be barred where the misconduct was intended to goad the defendant into moving for a mistrial. See *Roscoe v. State*, 286 Ga. 325, 326 (687 SE2d 455) (2009). In particular,

> the defendant must show that the State was purposefully attempting through its prosecutorial misconduct to secure an opportunity to retry the case, to avoid reversal of the conviction because of prosecutorial or judicial error, or to otherwise obtain a more favorable chance for a guilty verdict on retrial.

*Yarbrough v. State*, 303 Ga. 594, 596 (2) (814 SE2d 286) (2018) (citation and punctuation omitted). Whether the prosecutor intended to goad the defendant into moving for a mistrial is a question of fact that will not be overruled unless clearly erroneous. *Roscoe*, 286 Ga. at 327. "A trial court's findings of fact will not be deemed to be clearly erroneous if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them." Id. (citation and punctuation omitted).

The State argues that the trial court erred by applying the wrong legal standard in that it equated "egregious" prosecutorial

13

conduct with the sort of intentional goading that bars a retrial. But the trial court clearly found that the DA made the offending comments in hopes that they would result in a mistrial. It found that the DA made the comments "intentionally and strategically after realizing the evidence was not overwhelming" and "well aware that there was a high probability that this action would result in an immediate motion for mistrial[.]" And the trial court in particular found that the DA "acted with specific and deliberate intent to subvert the protections afforded by the Double Jeopardy Clause by goading the defendant into moving for a mistrial." The trial court thus made the requisite findings, applying the correct standard.

The State argues that the trial court's finding that the DA acted with the intent to goad the defense into moving for a mistrial is not supported by the evidence. In particular, the State faults the trial court for focusing on the DA's lengthy experience as a prosecutor without making any finding that he had acted similarly in past cases, and argues that the trial court's decision was "predicated on a grossly speculative notion" about the DA's ability

14

to predict the outcome of the case had it gone to verdict. But we do not find any clear error in the trial court's assumption that an experienced prosecutor is more likely than an inexperienced prosecutor to know that comments to the jury on a matter not in evidence may result in a mistrial. Nor do we find clear error in the trial court's consideration of the strength of the case the State had presented in determining whether the DA intended to goad the defense into moving for a mistrial. See *State v. Thomas*, 275 Ga. 167, 167-168 (562 SE2d 501) (2002) (concluding that trial court's finding that prosecutor intentionally provoked a mistrial was supported by evidence that the prosecutor had been a member of the bar for nine years and tried numerous felony cases, and that the prosecutor stood to gain by aborting the trial due to testimony favorable to the defense). And the State points to no authority that a finding that the prosecutor acted with the requisite intent must be supported by evidence that he had committed such an action in the past.

The State also appears to complain that the trial court faulted the DA for violating an order of the court when no such order had

15

been issued. But no order was necessary to put a prosecutor on notice that a comment to the jury on a matter not in evidence may result in a mistrial; OCGA § 17-8-75 does that. And to the extent that the trial court supported its finding about the DA's intent with reference to prior discussions among the parties and the court, those discussions certainly were relevant at least to the extent that they showed that the issues surrounding Porter were sensitive to the defense such that improper comment about her would result in a defense motion for a mistrial. On this record, and especially in the light of weaknesses in the case presented against Jackson at trial, we cannot say that the trial court's finding that the DA acted with the requisite intent was clearly erroneous. The State therefore has not shown that the trial court erred in granting the plea in bar.

*Judgment affirmed. All the Justices concur.*

2019.

Murder. Dougherty Superior Court. Before Judge Lockette.

*Gregory W. Edwards, District Attorney, Harold R. Moroz, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Ingrid P. Driskell*, for appellee.

*Lee Darragh, District Attorney, Robert W. Smith, Jr.*, amici curiae.