311 Ga. 639
FINAL COPY

S21A0243.  RIOS v. THE STATE.
S21A0402.  CARTER v. THE STATE.

WARREN, Justice.

Appellants Jefrey Rios and Justin Carter, along with Marco Cruz, were jointly indicted for three counts of felony murder and other crimes in connection with the shooting death of Cristian Carrillo.  The State could not locate Cruz after the crimes, and the case proceeded to trial against Rios and Carter.  On the first day of witness testimony, the trial court declared a mistrial, finding that critical evidence had not been disclosed to the defense until that day because of a Georgia Bureau of Investigation (GBI) computer error and that the trial could not proceed as a result.  Rios and Carter filed a joint plea in bar, but the trial court denied it and concluded that double jeopardy did not preclude the State from retrying them.  Rios and Carter appeal, and we affirm.

1.  Because the trial was terminated after the testimony of the

third witness on the first day that evidence was presented, we begin by recounting parts of the opening statements to provide context for what led to the mistrial in this case. In the State's opening statement, the prosecutor said that he expected the evidence to show that Rios drove Carter and Cruz to a hotel where they intended to purchase marijuana from Carrillo, who was 17 years old. Five other teenagers were in the hotel room with Carrillo. According to the prosecutor, Rios waited outside in his car while Carter and Cruz went into the hotel room. Carrillo had a gun beside him on a bed, but, before Carter and Cruz arrived, it had "jammed" when "one of the guys in the room fired into a mattress." Within a few minutes of entering the room, Carter "pistol whipped" Carrillo, and Cruz shot Carrillo three times, killing him. Cruz fled shortly after the crimes and has not been seen since. When law enforcement officers "picked up" Carter four days later, he was in possession of a 9mm handgun, which officers took into evidence. During Carter's opening statement, his counsel noted that the evidence would show that Carter had "a gun on him" in the hotel room; that he carried it in a

2

holster under his clothing; and that he had "a permit to be able to carry a concealed weapon."

GBI Agent Josh Ellis, who performed the forensic investigation of the hotel room, testified that he found several 9mm shell casings and cartridges in Room 132, which is where the shooting occurred. He also found a bullet that had traveled through the wall of Room 132 and lodged in the wall of an adjacent room, Room 133. The agent did not specify what type of bullet was found in the wall of Room 133.

After Agent Ellis testified, the prosecutor informed the trial court that he had received new information at about 11:45 that morning from a GBI firearms examiner, Noah Burdick, who was scheduled to testify the next day. Burdick previously had prepared three expert ballistics reports that the State had turned over to defense counsel. According to the prosecutor, Burdick said that, while preparing for his testimony the next day, he had printed off copies of the reports he had prepared and realized that a fourth report "had been generated at some time in July" and was sent

3

"through a software program from his computer to a device that publishes that report via website. There was some sort of software error, [and] the report never populated to be published or distributed to anyone." In other words, as the prosecutor explained to the trial court,

> the GBI did a report, we didn't know about the report. I, specifically, asked on Friday [September 20, 2019, the Friday before the trial began], via e-mail, about any outstanding reports and was told there were no reports. I now have in my possession a report dated September 26, 2019, or today, in the same case.

The prosecutor acknowledged that before his most recent communication with Burdick on September 26, the prosecutor had told Carter's attorney on Friday, September 20, that there were no new expert reports. The prosecutor also told the trial court that he had been prosecuting cases for 16 years and that he had "never in [his] career seen this."

With respect to the contents of Burdick's fourth report, the prosecutor informed the trial court that it contained new information showing that the bullet that had lodged in the wall of

4

Room 133 was a .38-caliber bullet. The prosecutor explained that this new information was "notable" because "[w]e anticipate all the evidence would be, all the witnesses would testify, [that] any — all firearms were semi[-]automatic weapons. But a .38 can only be fired from a revolver. So that's inconsistent with witness testimony." He added that if the court excluded the fourth report from evidence, the State was still prepared to move forward with the trial, and that he was not seeking a continuance.

Following the prosecutor's disclosure of the fourth report, a lengthy discussion ensued between the trial court, the prosecutor, and defense counsel outside the presence of the jury, with counsel having the opportunity to raise with the trial court issues such as the importance of the report, whether it was feasible to exclude the report, and whether it was feasible to proceed without discharging the jury. During that exchange, Carter's counsel informed the trial court that "[b]ased upon this new evidence, . . . I would not feel comfortable being able to move forward"; that "I don't see how to be able to salvage the case at this point"; and that "I know that the case

5

as it stands right now can't move forward."  He added that he would need to have his ballistics expert review the fourth report.

In response, the trial court asked Carter's counsel "how long [it would] take to get [his] ballistics expert[ ] . . . up to speed on this." Carter's counsel responded that he was "unsure if [he could] answer that question" because he would "need to make arrangements" to get "copies of the physical evidence" from the State and because he was "not sure what his [expert's] schedule [was] at this point."  The trial court and counsel agreed that it was unlikely that the case could be tried in one week, and Carter's counsel stated that it was his understanding that "this was the last 2 week calendar that the Court had for this year.  So I imagine by the time this pops up again that I would have what I would need to have if the case just continued as opposed to dismissed."  After this discussion of a possible continuance, Carter's counsel reiterated that "this new information . . . is material to our defense," but further stated "I don't see how we can possibly move forward," suggesting that he did not believe that a continuance was feasible.

6

Rios's counsel said that "I think we will all agree . . . that the information we've just received is vital to our defense" and that

> [w]e cannot use this jury which means we would have to start all over again. And we simply cannot go forward even if this is excluded. We can't go forward because it's vital not only to their offense, but to my defense. And I need to be able to evaluate that. . . . I don't have time right now to evaluate what they have presented to me.

With respect to the possibility of excluding the report, Carter's counsel at one point said that "if the Court says that . . . the State can't use this report, when Mr. Burdick is on the stand and I ask certain inferences it's gonna come right back to this report." He later added that

> [e]xcluding this information is, obviously, an option. However, if the examiner is going to testify in court I don't see a way around us asking certain questions and it not bring this report back up. He would, essentially, have to be on the stand and lie in order to be able to exclude this report and him still testify and us have a thorough cross-examination based upon our theories of the case.

Carter moved for a mistrial based on the newly discovered report, and Rios moved to dismiss the charges. The prosecutor stated that he did "not oppose a mistrial" and "recognize[d] . . . this

7

late breaking report is critical information." The trial court found that the prosecutor's "explanation [was] credible"; that the State had not "intentionally suppressed any evidence"; and that there had been no prosecutorial misconduct. The court also concluded that "[w]e can't exclude the evidence. It's obvious that's gonna be critical to the defense's case." The trial court granted a mistrial and denied Rios's motion to dismiss.

Rios and Carter later filed a joint plea in bar, contending that double jeopardy principles barred their retrial. More specifically, they moved for dismissal of the indictment "due to the misconduct of the State for failure to comply with the rules of discovery and for failing to deliver exculpatory evidence prior to trial." Rios amended his plea in bar, contending that the failure to disclose the fourth report before trial "was . . . an intentional act on behalf of the prosecution in order to induce a mistrial." Similarly, at the hearing, Rios and Carter contended that the State had engaged in intentional misconduct designed to goad them into moving for a mistrial. The trial court denied the plea in bar, ruling that Rios and Carter had

8

not established "intentional prosecutorial misconduct," "that the person in control of the prosecution instigated any alleged misconduct," "an intent on the part of the prosecution to gain an advantage at the retrial of this case," or "an intent to goad [Rios and Carter] into moving for a mistrial."

*Case No. S21A0243*

2. Rios concedes on appeal that he has abandoned his earlier argument that the State engaged in prosecutorial misconduct and deliberately withheld Burdick's fourth report. He contends, however, that the trial court granted a mistrial without his consent and that because there was no manifest necessity for doing so, double jeopardy barred his retrial and the trial court erred by denying his plea in bar. For the reasons explained below, we conclude that the trial court did not abuse its discretion by granting a mistrial and therefore did not err in denying Rios's plea in bar.

"The Double Jeopardy Clause of the Fifth Amendment, which applies to the states through the Fourteenth Amendment, says that '[n]o person shall be . . . subject for the same offence to be twice put

9

in jeopardy of life or limb.'  Jeopardy attaches when the jury has been impaneled and sworn." *Blake v. State*, 304 Ga. 747, 749 (822 SE2d 207) (2018) (cleaned up).  Among other things, "[t]he Double Jeopardy Clause . . . affords a criminal defendant a valued right to have his trial completed by a particular tribunal."  *Oregon v. Kennedy*, 456 U.S. 667, 671-672 (102 SCt 2083, 72 LE2d 416) (1982) (citation and punctuation omitted).

Even after jeopardy has attached, "trial courts may declare a mistrial over the defendant's objection, without barring retrial, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so." *Blake*, 304 Ga. at 749 (citation and punctuation omitted).  See also *United States v. Dinitz*, 424 U.S. 600, 606-607 (96 SCt 1075, 47 LE2d 267) (1976) (if "a mistrial has been declared without the defendant's request or consent," "the question whether under the Double Jeopardy Clause there can be a new trial . . . depends on whether

'there is a manifest necessity for the (mistrial)'") (citation omitted).[1]

On the other hand, "when a defendant moves for or consents to a mistrial, jeopardy continues and a retrial is allowed." *Medina v. State*, 309 Ga. 432, 435 (844 SE2d 767) (2020) (citing *Evans v. Michigan*, 568 U.S. 313, 326 (133 SCt 1069, 185 LE2d 124) (2013)). If, however, the defendant's motion for a mistrial was the result of prosecutorial misconduct "intended to goad the defendant into moving for a mistrial," a retrial may be barred. *Kennedy*, 456 U.S. at 676 (punctuation omitted). Accord *State v. Jackson*, 306 Ga. 626, 631 (831 SE2d 798) (2019) ("Although the Fifth Amendment's Double Jeopardy Clause generally does not bar the State from retrying a case after a mistrial is granted at the defense's request due to prosecutorial misconduct, a retrial may be barred where the

---

[1] We note that

[i]n determining whether a second trial is permitted on the same charges following a mistrial, our case law has treated all forms of double jeopardy claims, whether under the Constitution of the United States, under the Georgia Constitution, or under the Georgia Code, in a manner consistent with case law from the United States Supreme Court regarding the Fifth Amendment.

*Carman v. State*, 304 Ga. 21, 25 (815 SE2d 860) (2018). Rios makes no argument for different treatment here.

11

misconduct was intended to goad the defendant into moving for a mistrial."); *Yarbrough v. State*, 303 Ga. 594, 596 (814 SE2d 286) (2018) (same).

Here, Rios contends that he "did not consent to the mistrial," and as a result asks us to review the trial court's grant of a mistrial under the "manifest necessity" standard. See *Blake*, 304 Ga. at 749. For its part, the State contends that Rios effectively joined Carter's motion for mistrial by asking for dismissal and therefore asks us to evaluate whether Rios's motion for mistrial was the result of the prosecutor intentionally goading him into moving for a mistrial. See *Yarbrough*, 303 Ga. at 596. However, we need not resolve this issue because Rios's claim fails even if we accept his argument that he did not consent to the mistrial and that we should therefore apply the manifest necessity standard.

Under the manifest necessity standard, "a mistrial is appropriate when there is a 'high degree' of necessity" for declaring one. *Harvey v. State*, 296 Ga. 823, 831 (770 SE2d 840) (2015) (citation and punctuation omitted).

> Whether such necessity exists is to be determined by weighing the defendant's right to have his trial completed before the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances.

*Blake*, 304 Ga. at 749 (citation and punctuation omitted). Trial courts "are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances[ ] which would render it proper to interfere." *Carman v. State*, 304 Ga. 21, 26 (815 SE2d 860) (2018) (citation and punctuation omitted).

> Although the trial judge is not required to make explicit findings of manifest necessity nor to articulate on the record all the factors which informed the deliberate exercise of his discretion, the record must at least show that the trial court actually exercised its discretion. And although trial courts should give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives, a court's rejection of other alternatives is a proper exercise of the court's discretion — and not an abuse — if reasonable judges could differ about the proper disposition.

*Blake*, 304 Ga. at 749 (citations and punctuation omitted).

Here, the record shows that the trial court exercised its discretion and considered the relevant circumstances before

granting a mistrial. Indeed, when the prosecutor informed the trial court and defense counsel about Burdick's fourth report, Rios's counsel said that "the information we've just received is vital to our defense" and that "we simply cannot go forward even if this is excluded." Likewise, Carter's counsel emphasized the importance of the fourth report and expressed serious doubt about the trial moving forward, stating "I don't see how to be able to salvage the case at this point." Faced with newly disclosed evidence that Rios asserted was "vital" to his defense — an assessment with which both Carter and the State agreed — the trial court identified the significance of the fourth report and recognized the potential threat this late-breaking evidence posed to both Rios and Carter and to the public interest in "having fair trials designed to end in just judgments." *Blake*, 304 Ga. at 749. See also *Carman*, 304 Ga. at 30 (concluding that a trial court's concern for the defendant's adequate representation due to one of his counsel's emergency absence from trial supported the grant of a mistrial, and explaining that this constituted a "concern for the interest of justice" that "properly encompasses a

14

consideration of the interests not only of the defendant but also of the public").

Moreover, the record shows that the trial court consulted with the parties about potential alternatives to a mistrial. Among other things, it raised whether a continuance was possible to allow time for the defense to evaluate the new evidence. But Carter's counsel indicated that he was unsure when his expert would be able to evaluate the fourth report and that a continuance of some unspecified but potentially lengthy period of time might be necessary. Rios's counsel likewise stated that she did not "have time right now to evaluate what they have presented to me." By granting a mistrial, the trial court implicitly rejected the idea that a continuance was feasible under these circumstances.

The record also shows that the trial court heard from the parties about whether exclusion of the fourth report was possible. The prosecutor stated that he was ready to try the case with the evidence excluded, but — as recounted above — both Rios's counsel and Carter's counsel rejected that possibility, including because —

15

according to Carter's counsel — Burdick (the firearms examiner) "would have to . . . lie in order to be able to exclude this report and . . . still testify and us have a thorough cross-examination based upon our theories of the case."

Finally, even though the protection against double jeopardy that Rios asserts is designed to protect a defendant's "valued right" "to have his trial proceed to acquittal or conviction before" the jury that was "sworn and impaneled" to try his case, *Meadows v. State*, 303 Ga. 507, 511 (813 SE2d 350) (2018) (cleaned up), the record shows that Rios emphatically communicated to the trial court that he did not want his case to proceed to a conclusion before the jury chosen for his trial.

For all of these reasons, we conclude that the trial court did not abuse its discretion in granting a mistrial in Rios's case under the manifest necessity standard, and accordingly did not err by denying Rios's plea in bar. See *Arizona v. Washington*, 434 U.S. 497, 515-516 (98 SCt 824, 54 LE2d 717) (1978) (affirming the trial judge's grant of a mistrial for manifest necessity, in part, because the trial

judge "gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding."). Compare *Meadows*, 303 Ga. at 513-516 (concluding that the trial court abused its discretion in granting a mistrial "in the interest of juror safety" when, among other things, "[n]either the court nor counsel asked whether [the juror] felt unsafe or intimidated by the other jurors or by anything else, and the juror expressed no such concern" and where the court "fail[ed] to consider alternatives to declaring the mistrial").

### *Case No. S21A0402*

3. Carter contends that double jeopardy bars his retrial and that the trial court therefore erred in denying his plea in bar. We disagree.

As noted above, because Carter requested a mistrial, "the principle of double jeopardy generally will not bar a retrial unless

the defendant demonstrates that the prosecution intentionally goaded the defendant into moving for a mistrial." *Yarbrough*, 303 Ga. at 596.

> To that end, the defendant must show that the State was purposefully attempting through its prosecutorial misconduct to secure an opportunity to retry the case, to avoid reversal of the conviction because of prosecutorial or judicial error, or to otherwise obtain a more favorable chance for a guilty verdict on retrial. The key issue is not whether the prosecutor acted improperly, or even how egregious the misconduct was, but rather, what objective the prosecuting attorney was trying to achieve. Unless a prosecutor was trying to abort the trial, his or her misconduct will not prohibit a retrial.

Id. (cleaned up). Moreover, "[w]hether the prosecutor intended to goad the defendant into moving for a mistrial is a question of fact that will not be overruled unless clearly erroneous." *Jackson*, 306 Ga. at 632. "A trial court's findings of fact will not be deemed to be clearly erroneous if there is any evidence to support them, and this holds true even if the findings are based upon circumstantial evidence and the reasonable inferences which flow from them." Id. (citation and punctuation omitted).

We have also held that, with regard "to the double jeopardy

18

issue of whether there was intentional prosecutorial misconduct designed to produce a mistrial," the intent or misconduct of state or government actors other than the prosecutor cannot be attributed or imputed to the prosecutor. *State v. Traylor*, 281 Ga. 730, 732 (642 SE2d 700) (2007). "For double jeopardy to apply, it is not sufficient that an intent to instigate a mistrial was possessed only by an agent of the State whose scope of employment and authority differs from the prosecutor." Id. at 733.

Although Carter presents several arguments related to his double jeopardy claim, they essentially amount to a contention that the trial court erred in finding that the prosecutor did not engage in intentional misconduct intended to goad him into moving for a mistrial. In this regard, Carter correctly notes that forensic ballistics was a key issue in the case, that the prosecutor had asked Burdick to examine the ballistics evidence gathered at the crime scene, and that the prosecutor, shortly before trial, contacted Burdick to inquire if any further ballistics reports were outstanding. In light of these facts, Carter presumes that the prosecutor must

19

have intentionally failed to follow up with Burdick until the day before he was scheduled to provide expert testimony at trial, and contends that this Court should consider this alleged failure an act of prosecutorial misconduct — including an intentional violation of *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963). Carter also contends that, given the prosecutor's experience, he should not be allowed to "shift responsibility" for the failure to have produced the fourth report before trial to a firearms examiner. Finally, Carter contends that the fourth report was damaging to his defense and that the State would benefit from it at a retrial, which supports an inference that the prosecutor engaged in misconduct to goad Carter into moving for a mistrial.

The record, however, undercuts Carter's claims. Critically, the trial court credited the prosecutor's explanation about his effort to determine whether other ballistics reports existed and his explanation about the delay in disclosing Burdick's fourth report.[2]

_____

[2] Carter appears to contend that we should not consider the prosecutor's explanation of the discovery error because it was based on hearsay statements

20

Based on that explanation, the trial court found that the prosecutor had not "intentionally suppressed any evidence"; that the GBI had "inadvertently, somehow through this weirdly fangled computer stuff," not uploaded the fourth report; and that "[t]here's been no prosecutorial misconduct." Even Carter's counsel expressed that he did not "believe that this was something, necessarily, that was done by the State intentionally. I know that they were checking [with the firearms examiner's office]. And if there was a computer error, there was a computer error." Moreover, Carter's assertion that the State would benefit from a retrial is belied by the prosecutor's willingness to proceed with the trial without the fourth report and also by Carter's assertion in his plea in bar that the "misconduct of the State" was its "failure . . . to deliver *exculpatory* evidence prior to trial" (emphasis supplied); and in any event, because of the shortened trial, it is unclear from the record which party (if any)

by the firearms examiner. But even if it were hearsay evidence, Carter did not object at trial on this ground and does not enumerate any error regarding it on appeal, and hearsay evidence that is not objected to at trial "shall be legal evidence and admissible." OCGA § 24-8-802.

21

would "benefit" the most from the mistrial.

Based on this record, we cannot say that the trial court's finding that the prosecutor did not "instigate[ ] any alleged misconduct" was clearly erroneous. See *Jackson*, 306 Ga. at 632.[3] Indeed, the record supports the trial court's findings that the prosecutor's failure to disclose Burdick's fourth report before trial was inadvertent and the result of a computer error at the GBI and, that, as a result, the prosecutor did not intend to goad Carter into moving for a mistrial. See id.

For these reasons, the trial court did not err in rejecting Carter's double jeopardy claim and in denying his plea in bar. See *Yarbrough*, 303 Ga. at 597 (holding that the trial court did not clearly err in finding that the prosecutor did not intend to goad the defendant into moving for a mistrial where the trial court observed the prosecutor's demeanor and the record showed that the

---

[3] Moreover, even if Burdick engaged in misconduct in failing to identify his fourth report (a determination we decline to address today), any such misconduct could not be imputed to the prosecutor. See *Traylor*, 281 Ga. at 732-733.

22

prosecutor gestured toward the defendant during a witness's testimony in a "frustrated attempt" to get the witness to identify the defendant and not to cause a mistrial); *Traylor*, 281 Ga. at 732-733 (holding that the trial court erred in granting the defendant's plea in bar because an investigator's alleged misconduct, absent instigation by the prosecutor, could not be imputed to the prosecutor); *Weems v. State*, 269 Ga. 577, 580 (501 SE2d 806) (1998) (holding that, because the trial court's finding that the prosecutor did not engage in misconduct was supported by the record and because any alleged misconduct by a detective could not be imputed to the prosecution, the trial court did not err in denying the defendant's plea in bar based on prosecutorial misconduct intended to goad the defendant into moving for a mistrial). Accordingly, we affirm the denial of Carter's plea in bar.

*Judgments affirmed. All the Justices concur.*

23

Decided June 1, 2021.

Murder. Gwinnett Superior Court. Before Judge Mason.

*Cathy M. Alterman*, for appellant (case no. A21A0243).

*Frank T. Smith*, for appellant (case no. A21A0402).

*Daniel J. Porter, District Attorney, Daniel P. Sanmiguel, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.